ATTORNEY GENERAL v MICHIGAN NATIONAL BANK

*Docket No. 50469. Submitted February 9, 1981, at Lansing.—Decided October 6, 1981.*

In January, 1980, Michigan National Bank changed its system of calculating moneys to be paid by mortgagors into mortgage escrow accounts from the zero balance method to the individual item accrual method. The Attorney General, because of complaints by mortgagors, commenced suit in Ingham Circuit Court on January 30, 1980, seeking an injunction and other relief. The complaint alleges that changing from the zero balance method to the individual item accrual method is contrary to four mortgage agreements attached to the complaint, is contrary to the historical implementation of the four mortgage agreements, and requires unreasonable amounts of money to be paid into escrow by the four mortgagors. The complaint further alleges that Michigan National Bank violated the Michigan Consumer Protection Act (CPA) and that the newly-instituted method of calculating escrow account payments is not authorized by federal law so as to be exempt from the consumer protection act. Defendant moved for summary judgment or accelerated judgment or both, based upon failure to state a cause of action or lack of subject-matter jurisdiction or both. Following oral arguments on ths motion, the trial court found as a matter of law that the individual item accrual method of calculating escrow payments is authorized by the Real Estate Settlement Procedures Act (RESPA) and by the terms of the mortgage contracts and, therefore, is exempt from the CPA. The court granted defendant's motion for summary judgment as to that part of plaintiff's complaint which alleged the individual item accrual method was in violation of the mortgage contracts and the CPA but denied defendant's motion for summary judgment as to those portions of plaintiff's complaint alleging that defendant had made unreasonable and excessive demands upon its mortgagors, Robert Holmes Bell, J. Thereaf-

REFERENCES FOR POINTS HEADNOTES
[1] 61A Am Jur 2d, Pleading §§ 229, 236.
    73 Am Jur 2d, Summary Judgment §§ 26, 27.
[2] [No reference]

ter, plaintiff and defendant stipulated and agreed that the mortgage escrow collections by defendant under the four mortgage agreements attached to the complaint, computed by the individual item accrual method, do not exceed the amount of escrow collections provided for in RESPA. Summary judgment was then granted in favor of defendant as to plaintiff's allegations that the escrow collections were unreasonable and excessive and in violation of the four mortgage agreements and the CPA, Robert Holmes Bell, J. Plaintiff appeals. *Held:*

1. It was improper to dispose of the case by summary judgment. Assuming that the individual item accrual method creates a positive balance in any of the mortgages, a question of fact is presented as to whether that excess amount is unreasonable and not necessary to provide a sufficient fund out of which to pay the appropriate disbursements. Stipulation by the parties to the fact that the amounts held by defendant in the escrow funds do not exceed the amount allowed by RESPA does not resolve the reasonableness question because the statute provides an outer limit and does not determine reasonableness per se.

2. The trial court's finding that the individual item accrual method is specifically authorized by RESPA, and is therefore exempt from plaintiff's claim under the CPA, is not supported by the statute. The statute does not specifically authorize any accounting methods but merely sets outer limits on the amounts of money which a mortgagor may be required to pay into an escrow account. Even if the section in question were to be construed as an authorization of use of the individual item accrual accounting method, it could not be used to override a contrary contractual provision. Thus, defendant's conduct as to the mortgages which do not by their terms authorize the use of such a method cannot be considered exempt from the CPA.

3. Each individual mortgage contains an escrow clause regarding the sufficiency of the account to allow the bank to make necessary disbursements. To the extent that the bank demands additional funds to be paid into escrow over and above what is reasonably needed to allow such disbursements, the bank is in violation of its agreements and also in violation of the spirit if not the letter of RESPA. The defendant's decision to require additional escrow payments without individual justification may indeed constitute a violation of the CPA.

4. The case must be remanded to the trial court where the plaintiff must be allowed to proceed to trial on the question of reasonableness as to each mortgage which, by its terms, allows the use of the individual item accrual accounting method.

Those mortgages which prohibit the defendant from requiring payments on an individual item accrual method must be administered according to their terms and the defendant is left to the contractually agreed upon deficiency assessment to prevent deficiencies in the escrow account.

Reversed and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — MOTIONS — APPEAL — COURT RULES.

A motion for summary judgment based upon a failure to state a claim upon which relief can be granted under the court rules tests only the legal, not the factual, sufficiency of a party's pleadings; an appellate review of a summary judgment accepts as true all of the appealing party's factual allegations, as well as any reasonable inferences which may be drawn therefrom; a motion for summary judgment must be denied if the pleadings of the nonmoving party state a legally valid claim and raise triable issues of fact (GCR 1963, 117.2[1]).

2. MORTGAGES — ESCROW ACCOUNTS.

A mortgagee must exercise the discretion reposed in it by a mortgage agreement honestly and in good faith in the evaluation of the sum necessary to provide an adequate and available escrow fund from which to make necessary disbursements.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Patrick F. Isom*, Assistant Attorney General in charge, Consumer Protection Division, for plaintiff.

*McLellan, Schlaybaugh & Whitbeck* (by *Rex E. Schlaybaugh, Jr.*, and *Stephen D. Winter*), and *Douglas W. Mires*, General Counsel, for defendant.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

CYNAR, J. Plaintiff's complaint filed on January 30, 1980, contends defendant, a national banking association organized and existing under the laws of the United States, illegally changed its system of calculating moneys to be paid by mortgagors

into mortgage escrow accounts from the "zero balance" to the "individual item accrual" method. Prior to January 1980, defendant had been using the "zero balance" method of calculating mortgage escrow accounts. The complaint alleged that defendant's changing to the individual item accrual accounting method is contrary to the four mortgage agreements attached to the complaint; is contrary to the historical implementation of the four mortgage agreements; and requires unreasonable amounts of money to be paid into escrow by the said four mortgagors. The complaint also alleged that defendant acted in violation of the Michigan Consumer Protection Act (CPA), MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.,* and that the newly instituted method of calculating escrow account payments is not authorized by federal law so as to be exempt from the CPA.

Defendant contends that the modification in the method of escrow account collection was necessitated because the "zero balance" method was not capable of handling the rapidly increasing cost of taxes and insurance. Overdrafts frequently occurred in escrow accounts. Defendant alleges that, in December 1978, 51.3 percent of Michigan National Bank's loans had overdue escrow balances totalling $742,983.96. In December 1979, 52 percent of the loans had overdue escrow balances totalling $991,814.93. Such overdrafts, defendant alleged, represent interest-free loans to customers.

Attached to the plaintiff's supplemental brief in opposition to the motion for accelerated and/or summary judgment are true copies of 25 mortgage payment notices received by the Attorney General, these being in addition to four others relating to the mortgages identified in the complaint. Also attached and supported by affidavit is a chart making reference to the 25 mortgage payment

change notices identified as exhibits A through Y. Plaintiff alleged that in some instances there was no deficiency but an excess, that the authority to demand payment or eliminate a deficiency is subject to the mortgage agreement provisions, that the net excess demanded was neither authorized nor permitted and that the contractual language does not grant to the Bank authority to contrive a deficiency through an accounting device.

For nearly ten years prior to January 1980, defendant (hereafter referred to as "Bank") calculated mortgage escrow account payments by the zero balance method. By affidavit of its vice-president, Steven P. Potter, the Bank describes the zero balance method as follows:

"The zero balance method lumps funds for different escrow items, such as taxes, hazard insurance, etc., into a single account. The entire account is treated as a whole. At escrow analysis time (performed annually by Michigan National Bank, covering the period April 1 through March 31) the estimated requirements for anticipated disbursements during the 12 months are added and the balance in the account at the time of analysis is subtracted (or added if there is an overdraft). Theoretically, the account should reach zero after payment of the largest bill."

The plaintiff's complaint illustrates the zero balance method by the following example:

*ASSUMED FACTS*

| | | |
|---|---|---|
| Taxes due July 1 — | $500 | Balance in account prior to Jan. 1 = zero |
| Insurance due Sept 1 — | 200 | Monthly escrow payments = $100.00 (1/12 estimated 12 month payments) |
| Taxes due Dec. 1 — | 500 | |

*CALCULATION*

| | |
|---|---:|
| BALANCE (prior to first payment) .................. | $   0.00 |
| Payments to Acct Jan. 1–July 1 ....................... | + 700.00 |
| Total ......................................... | 700.00 |
| Tax payment July 1 .................................. | − 500.00 |
| EXCESS BALANCE ............................. | 200.00 |
| Payments to Acct Aug 1.–Sept. 1 ....................... | + 200.00 |
| Total ......................................... | 400.00 |
| Insurance payment Sept. 1 ........................... | − 200.00 |
| EXCESS BALANCE ............................. | 200.00 |
| Payments to Acct Oct. 1–Dec 1 ....................... | + 300.00 |
| Total ......................................... | 500.00 |
| Tax payment Dec. 1 .................................. | − 500.00 |
| EXCESS BALANCE (after final payment) .......... | $   0.00 |

Defendant would agree that mathematically this is a correct representation of the zero balance method. However, defendant argues that minor changes in due dates of the escrow payments will result in defendant's advancing hundreds of dollars for the benefit of each mortgagor whose account is overdrawn. Thus, defendant offers the following example of a zero balance account, also involving total payments of taxes and insurance premiums of $1,200:

*ASSUMED FACTS*

Balance in account December 31, 1980, is zero.

Taxes due June 15 —      $600
Insurance due Jan. 15 —  $200
Taxes due Dec. 1 —       $400

| | |
|---|---:|
| Balance as of December 31 | $   0.00 |
| Payment *to* acct January 1 | 100.00 |
| Payment *from* acct January 15 for insurance | (200.00) |
| Balance in account January 15 | (100.00) |
| Payment *to* acct Feb. 1–June 1 | 500.00 |
| Balance in account June 1 | 400.00 |
| Payment *from* account June 15 for taxes | (600.00) |
| Balance in account June 15 | (200.00) |
| Payment *to* account on July 1 | 100.00 |
| Balance in account on July 1 | (100.00) |
| Payment *to* account on Aug. 1 | 100.00 |

| | |
|---|---|
| Balance in account on Aug. 1 | 0.00 |
| Payment *to* account Sept. 1 thru Dec. 1 | 400.00 |
| Payment *from* account for Dec. 1 taxes | (400.00) |
| Balance in account Dec. 1 | $  0.00 |

In January 1980, defendant began to implement the individual item accrual method of calculating mortgage escrow accounts and notified its mortgagors of the escrow payments which would be required under this method. There is no disagreement among the parties as to the meaning of the individual item accrual accounting system which has been described by plaintiff as follows:

"That method requires the mortgagor to maintain a separate escrow account for each disbursement that must be made over a twelve (12) month period. For example, separate accounts were created for summer taxes, hazard insurance and winter taxes. Those separate accounts were structured so that thirteen-twelfths (13/12ths) would be in each of them when the specific disbursement for which it had been created came due. Thus, when the winter taxes came due, they were paid from the winter tax escrow account, resulting in a balance of one-twelfth (1/12th) of the total in that winter tax escrow account. At that same time, the summer tax escrow account might have accumulated six-twelfths (6/12ths) of the amount which would be needed when that specific bill came due, and the insurance account might have four-twelfths (4/12ths) of the amount which would be needed when that bill came due."

The following example of how the individual item accrual method works is set out in plaintiff's brief:

*ASSUMED FACTS*[1]

| | | |
|---|---|---|
| Taxes due July 1 — | $500 | Balance in account prior to |
| Insurance due Sept. 1 — | $200 | Jan. 1 — zero |
| Taxes due Dec. 1 — | $500 | |

---

[1] Except for some minor changes in the figures and some additional explanatory text, this illustration is identical to that found in plaintiff's complaint.

*CALCULATION*

Calculation of Balance which should
be in the fund prior to Jan. 1 payment

Months since
last payment

| | | |
|---|---|---|
| Taxes due July 1 | 6 mos × $ 41.67 | = $250.02 |
| Insurance due Sept. 1 | 4 mos × $ 16.66 | = $ 66.64 |
| Taxes due Dec. 1 | 1 mo × $ 41.67 | = $ 41.67 |

Monthly escrow payment amt                    $100.00

Balance which should be in acct
prior to Jan. 1 .....................................$358.34

"SHORTAGE" IN ACCOUNT
(prior to Jan. 1 payment) .............................$358.34
(The amount demanded by Michigan National Bank
to convert from "zero balance" to "individual
item accrual.")

Calculation assuming the "shortage"
of $358.34 is paid prior to Jan. 1

BALANCE ........................................ $ 358.34
Payments to Acct Jan. 1–July 1 ........................... + 700.00

Total (July 1 Tax Acct=541.69; Sept. 1 Ins

Acct=183.26; Dec. 1 Tax Acct=333.36) .......... 1058.34

Tax Payment July 1 ............................... − 500.00

EXCESS BALANCE .............................. 558.34

Payments to Acct Aug. 1–Sept. 1 ......................... + 200.00

Total (July 1 Tax Acct=125.02; Sept. 1 Ins

Acct=216.67; Dec. 1 Tax Acct=416.67) ................ 758.34
Insurance Payment Sept. 1 .............................. − 200.00

EXCESS BALANCE .............................. 558.34

Payments to Acct Oct. 1–Dec. 1 ........................... + 300.00

Total (July 1 Tax Acct=250.02; Sept. 1 Ins
Acct=66.67; Dec. 1 Tax Acct=541.67) ................ 858.34

Tax Payment Dec. 1..................................... − 500.00

EXCESS BALANCE .............................. $ 358.34

Defendant agrees that this is a correct illustration of how the individual item accrual method would operate; however, defendant would substi-

tute and use the term "positive balance" in place of the term "excess balance". By "positive balance" defendant means that the $358.34 in the escrow accounts on December 1, when combined with other payments during the course of next year, will be sufficient to pay the various taxes and insurance premiums as they fall due.

To effectuate the implementation of the individual item accrual method in January 1980, defendant sent notices to each of approximately 15,000 mortgagors, advising them of "shortages" in their escrow accounts. The mortgagors were given the opportunity of paying this "shortage" by February 1, 1980, or incurring increases in their escrow payments, said increases to commence on April 1, 1980.

Plaintiff, because of complaints by mortgagors, commenced suit on January 30, 1980, seeking an injunction and other relief. Concurrent with the filing of plaintiff's complaint, an *ex parte* restraining order enjoined defendant from implementing the individual item accrual accounting method for all of the residential mortgages it held or serviced. This order was subsequently dissolved and is not at issue on appeal.

Subsequent to the filing of briefs and affidavits, the trial court, on February 8, 1980, heard oral arguments on defendant's motion for summary judgment and/or accelerated judgment based upon failure to state a cause of action and/or lack of subject-matter jurisdiction. No evidentiary proceedings were conducted at the hearing.

The trial court opinion, dated February 15, 1980, found as a matter of law that the individual item accrual method of calculating escrow payments is authorized by the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 USC 2601, *et seq.,* and by

the terms of defendant's mortgage contracts. Determination that the use of the individual item accrual method does not violate the Consumer Protection Act or the mortgage contracts does not end the inquiry. Plaintiff had also alleged that defendant overestimated the amount of money needed to pay the taxes and insurance when due. The question whether or not defendant is making excessive and unreasonable demands is a question of fact which cannot be decided by a motion for summary judgment. The opinion granted defendant's motion for summary judgment as to that part of plaintiff's complaint which alleged that the individual item accrual method was in violation of the mortgage contracts and the CPA but denied defendant's motion for summary judgment as to those portions of plaintiff's complaint which alleged that defendant had made unreasonable and excessive demands upon its mortgagors. Pursuant to the opinion, an order granting partial summary judgment for Michigan National Bank was entered on February 27, 1980.

On March 17, 1980, plaintiff and defendant stipulated and agreed that the mortgage escrow collections by defendant under the four mortgages attached to plaintiff's complaint, computed by utilization of the individual item accrual method, did not exceed the amount of escrow collections provided for in § 10(2) of the Real Estate Settlement Procedures Act, 12 USC 2609(2). On March 17, 1980, the trial court entered an order for summary judgment, which both parties approved for entry. The order for summary judgment recites the stipulation and states the parties further agreed that the entry of this order is appropriate to resolve the remaining final issue. Summary judgment was granted to defendant as to that portion of plain-

tiff's complaint which alleged that the escrow collections were unreasonable and excessive and therefore in violation of the four alleged mortgage agreements and the CPA. Further, this summary judgment and the partial summary judgment of February 27, 1980, constitute a final judgment and dispose of this case.

I

In *Dillon v Tamminga #2,* 64 Mich App 305, 307-308; 236 NW2d 718 (1975), this Court stated:

"A motion for summary judgment under GCR 1963, 117.2(1) tests only the legal, not the factual, sufficiency of the pleadings. *Van Liere v State Highway Dep't,* 59 Mich App 133; 229 NW2d 369 (1975), *Crowther v Ross Chemical and Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972). An appellate review accepts as true all of plaintiff's factual allegations as well as any reasonable inferences which may be drawn from the allegations. *Hoag v Paul C Chapman & Sons, Inc,* 62 Mich App 290; 233 NW2d 530 (1975), *Martin v Fowler,* 36 Mich App 725; 194 NW2d 524 (1971). A summary judgment motion must be denied if the pleadings state a legally valid claim and raise triable issues of fact. *Blades v Genesee County Drain Dist No 2,* 375 Mich 683; 135 NW2d 420 (1965)." See also *Soloman v Western Hills Development Co,* 88 Mich App 254, 256; 276 NW2d 577 (1979).

Attached to plaintiff's complaint are portions of four mortgages held by defendant as mortgagee. These mortgage agreements contain the following escrow clauses:
Exhibit B:

"(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance

covering the mortgaged property, plus taxes and assessments next due on the mortgaged property (all as estimated by the Mortgagee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes, and assessments will become delinquent, such sums to be held by Mortgagee in trust to pay said ground rents, premiums, taxes, and special assessments;

\* \* \*

"\* \* \* If, however, the monthly payments made by the Mortgagor under (b) of paragraph Third preceding shall not be sufficient to pay ground rents, taxes, and assessments, and insurance premiums, as the case may be, when the same shall become due and payable, then the Mortgagor shall pay to the Mortgagee any amount necessary to make up the deficiency, on or before the date when payment of such ground rents, taxes, assessments, or insurance premiums shall be due."

Exhibit D:

"Second. To pay to mortgagee with the monthly payments of principal and interest, a pro rata portion of the taxes, assessments and insurance premiums next to become due, as estimated by mortgagee, so mortgagee will have sufficient funds on hand to pay taxes, assessments and insurance premiums thirty days before the delinquency date thereof, and to pay to mortgagee immediately any deficit thereon. Moneys so held shall not bear interest, and, upon default, may be applied by mortgagee on account of the mortgage indebtedness."

Exhibit F:

"The Mortgagors in addition to, and at the times of the monthly payments of principal and interest, shall pay to the Bank such additional amounts as shall be estimated from time to time by the Bank as necessary for the establishment of a reserve fund from which, insofar as it may be sufficient, the Bank shall pay when

due all taxes, assessments and insurance premiums on said property. * * * If the Bank has not by reason of said payments, a sufficient sum to pay such taxes, assessments and insurance premiums, the Mortgagors shall forthwith on demand pay to the Bank a sum, which with the sums already paid to the Bank as aforesaid, will be sufficient to pay in full all such taxes, assessments and insurance premiums."

Exhibit H:

"Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments which may attain priority over this Mortgage, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof.

*   *   *

"If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof."

In granting defendant's motion for summary judgment, the trial court in its February 15, 1980, opinion held, as a matter of law, that the individual item accrual method of calculating escrow payments is authorized by the terms of the mortgages. The trial court stated:

"In these mortgages, the mortgagors agreed to pay a sum 'as estimated by the mortgagee' sufficient to pay

taxes and insurance. This language grants a considerable amount of discretion to defendant as to the method of calculating the sum necessary to provide an adequate fund from which to pay taxes and insurance premiums.

"The issue thus becomes whether or not the language of the mortgage contracts prohibit the use of individual item accrual accounting to estimate the amount of these payments. This precise issue was answered by the Michigan Court of Appeals in the case of *Burkhardt v City National Bank of Detroit,* 57 Mich App 649; 226 NW2d 678 (1975). The plaintiffs in the *Burkhardt* case also alleged that the individual item accrual method was not contemplated by the mortgage contract. The Court of Appeals rejected this contention and ruled that utilization of this accounting procedure was not a breach of the mortgage contract. The mortgage language in *Burkhardt* is indistinguishable from the language of defendant's mortgages. The holding of *Burkhardt* is clear and controlling. The language of defendant's mortgages, as a matter of law, allows defendant, within its discretion, to use the individual item accrual method of calculating escrow payments."

We disagree with the trial court's interpretation of the language in the instant mortgages, and we find the trial court's reliance on *Burkhardt* to be misplaced.

We first note that the language of each of the four escrow clauses is different and thus must be interpreted separately to determine the intention of the parties. The need for individual interpretation of the clauses is best illustrated by contrasting the exhibit F clause with the exhibit H clause. Exhibit F, by its terms, requires the mortgagor to pay to the Bank, on the dates that monthly payments of principal and interest are due, such additional amounts as shall be estimated from time to time by the Bank as necessary for the establishment of a reserve fund from which "* * * the Bank shall pay when due all taxes, assess-

ments", etc. Such language clearly gives the defendant Bank discretion to estimate the amount of the payments to be made into the escrow accounts and does not obligate the Bank to make its estimates according to any particular accounting formula nor to make it by the same method each time an estimate is made. Such language apparently contemplates the type of broad discretion found in *Burkhardt.*

By contrast, exhibit H requires a monthly payment into escrow of one-twelfth of the total yearly taxes, assessments and insurance premiums "* * * all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof". This language gives the Bank discretion to estimate what the required disbursements from the escrow account will be, but the methods of payment into the account is fixed by the mortgage at one-twelfth the yearly total. In other words, the clause requires payments to be made according to the zero balance method. Exhibit H provides a protection to the Bank from the possibility of having a negative balance in the account by providing a deficiency assessment mechanism. Thus, the Bank's complaint that it must make interest free loans under the zero balance method is unfounded.

Exhibits B and D are less clear in meaning. Both clauses contain language stating that the amounts of the disbursements which will be required to be made from the fund are to be estimated by the Bank, but, as in exhibit H, the method of required payments into the accounts is set forth in the mortgage and is apparently not open to unilateral modification. Our reading of exhibit B convinces us that its language calls for payments to be made into escrow by the individual item accrual method.

That exhibit speaks in terms of the sum of each type of payments "next due" less the sums already paid on each type of payment divided by the number of months to elapse before one month prior to the date that such payments are due. We read this language as requiring that payments be made into escrow according to the individual item accrual method. The deficiency clause in exhibit B is obviously provided to protect the Bank from the possibility that a negative balance will occur by reason of an unanticipated increase in any of the required disbursements.

Exhibit D requires monthly payment of a "pro rata portion of the taxes, assessments and insurance premiums next to become due, as estimated by mortgagee (the Bank)" so that the Bank will have sufficient funds to make each disbursement 30 days before it is due. We believe that this language also calls for use of an individual item accrual method of making payments into escrow because of the reference to items "next to become due" and the fact that the items apparently do not all become due on a common date or on an annual basis.

Having made the above interpretations, we conclude that the individual item accrual method is prohibited by exhibit H, mandated by exhibits B and D, and permitted by exhibit F.

It is apparent that the Bank has attempted to treat all of the mortgages alike for purposes of administrative convenience. It also appears likely that treating all of the mortgages alike may result in a windfall to the Bank by reason of the fact that a positive balance may be maintained in the combined escrow accounts of each mortgage well in excess of what is required to make each disbursement as it comes due. Whether this is true

depends on the amount and timing of each payment connected with a given mortgage. Assuming such a positive balance exists, a question of fact would then be presented as to whether that excess amount is unreasonable and not necessary to provide a sufficient fund out of which to pay the appropriate disbursements. That the parties stipulated to the fact that the amounts held by the Bank in the escrow funds did not exceed the amount allowed by § 10(2) of the Real Estate Settlement Procedures Act, 12 USC 2609(2), does not resolve the reasonableness question because the statute provides an outer limit and does not determine reasonableness per se. It was therefore improper to dispose of the case by summary judgment. *Dillon, supra.*

## II

The trial court found that the individual item accrual method is specifically authorized by 12 USC 2609 and therefore exempt from plaintiff's claim under the CPA, MCL 445.904(1)(a); MSA 19.418(4)(1)(a). We cannot agree with the trial court's reading of 12 USC 2609.

That statute provides as follows:

"**§ 2609. Limitation on requirement of advance deposits in escrow accounts**

"A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower—

"(1) to deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges

attributable to the period beginning on the last date on which each such charge would have been paid under the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, and ending on the due date of its first full installment payment under the mortgage, plus one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period; or

"(2) to deposit in any such escrow account in any month beginning with the first full installment payment under the mortgage a sum (for the purpose of assuring payment of taxes, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period: *Provided, however,* That in the event the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency."

Such language does not specifically authorize any accounting methods, but merely sets outer limits on the amounts of money which a mortgagor may be required to pay into an escrow account. The section in question is a prohibition, not an authorization. Even if the section in question were to be construed as an authorization of use of the individual item accrual accounting method,

surely it could not be used to override a contrary contractual provision. Thus, defendant's conduct as to the mortgages which do not, by their terms, authorize the use of such a method cannot be considered exempt from the CPA.

As noted above, some of the mortgages appear to allow or even mandate the individual item method, and, as to those mortgages, a different problem is presented. A key circumstance in the instant case (and one which was absent in *Burkhardt)* is that the mortgages in question are not new, but have been administered under the zero balance method for a considerable period of time. One aspect of *Burkhardt* that remains applicable to the instant case is the requirement that where a party in the Bank's position has discretion to determine amounts related to the escrow accounts, that discretion must be exercised in good faith. The purpose of the escrow clauses in all four of the mortgages is to protect the Bank's interest in the property from possible subordination due to delinquencies in taxes and assessments and from loss due to uninsured physical damage. The crux of the instant case is that the Bank is attempting a blanket change in the handling of all of its mortgage escrow accounts without justification on an individual basis. Each mortgagor is being required to increase the amounts held in escrow regardless of whether deficits will occur in his own account. Both parties rely on examples to show consequences of one or the other methods, but we note that each of the escrow clauses referred to above contains language regarding the sufficiency of the account to allow the Bank to make necessary disbursements. To the extent that the Bank demands additional funds to be paid into escrow over and above what is reasonably needed to allow such

disbursements, the Bank is in violation of its agreement and also in violation of the spirit if not the letter of RESPA, one of the purposes of which is to reduce the amounts that homeowners are required to place in escrow. 12 USC 2601(b)(3). The defendant Bank's decision to require additional escrow payments without individual justification may indeed constitute a violation of the CPA.

At the very least, it is clear that the Bank is not exempt from the CPA by reason of RESPA.

## III. Conclusion

Pursuant to our discussion of Issue I above, we remand the instant case to the trial court for proceedings in accordance with this opinion.

In the instance of those mortgages such as exhibit H, defendant is prohibited by the contract language from requiring payments on an individual item accrual basis and is left to the contractually agreed upon deficiency assessment to prevent deficiencies in the escrow account. With respect to those mortgages whose language contemplates individual item accrual payments into the account, defendant is under an obligation to exercise its discretion in requiring payments so that the amounts retained are not unreasonably excessive. Whether the amounts retained are unreasonably excessive is a question of fact that depends on the timing and amount of payments in each case, and plaintiff must be allowed to proceed to trial on the question of reasonableness.

Reversed and remanded.