DECISION
Before the Court is a motion filed by the defendants by which they ask this Court to reconsider its decision of April 20, 2001, denying their motion to dismiss plaintiffs' complaint, or alternatively to vacate that decision and certify a question to the Rhode Island Supreme Court. Plaintiffs have objected to this motion.
 Facts/Travel
For the reasons set forth in its written decision dated April 20, 2001 ("Decision"), this Court denied the defendants' motion to dismiss this matter in its entirety. That Decision, reflected in an order of this Court entered on June 21, 2001, is incorporated by reference herein. Subsequently, on May 1, 2001, the defendants ("Fleet" or "defendants") filed the subject motion for reconsideration or certification with a supporting memorandum. Thereafter, the Court received a letter dated May 3, 2001, via Federal Express mail, from the First Senior Deputy Comptroller and Chief Counsel for the Office of the Comptroller of the Currency ("OCC") in Washington, D.C. — a non-party.[1]
Thereafter, the Court received from defendants' counsel a May 7, 2001 letter with attachments, including a copy of a purported Consent Order between the OCC and Direct Merchants Credit Card Bank, entitled In the Matter of Direct Merchants Credit Card Bank, N.A., Scottsdale Arizona, OCC No. 2001-24 (May 3, 2001) (Consent Order), which the defendants filed in Superior Court.[2] On May 21, 2001, the Court received a letter from plaintiffs' counsel[3] to which was attached, inter alia, a copy of defendants' Petition for Issuance of Writ of Certiorari which the defendants had filed in the Superior Court on May 10, 2001.[4]
In response to the deluge of correspondence received, the Court advised the parties on June 1, 2001 to submit any arguments related to the subject motion in proper form, namely memoranda, on or before June 8, 2001, and set the matter down for hearing on June 21, 2001. In response, the defendants submitted on June 5, 2001 a copy of their Petition for Issuance of Writ of Certiorari that they had filed previously in the Supreme Court and the OCC's Motion for Leave to File Memorandum in Support of Petition for Issuance of Writ of Certiorari and the OCC's Memorandum in Support of Defendants' Petition for Issuance of Writ of Certiorari which the OCC filed in the Supreme Court on May 31, 2001. Despite the Court's request for the matter to be fully briefed by June 8, 2001, on June 18, 2001, the defendants filed a reply memorandum. Additionally, on June 20, 2001, the day before the scheduled hearing on defendants' motion for reconsideration, the Court received a letter, again via Federal Express mail, from the First Senior Deputy Comptroller and Chief Counsel for the OCC.[5]
In the pending motion, the defendants ask this Court to reconsider its earlier decision and to grant their motion to dismiss the plaintiffs' claims pursuant to the Rhode Island Unfair and Deceptive Trade Practices Act ("RIUTPA"), G.L. 1956 § 6-13.1-1 et seq., and their contract law claims or, in the alternative, to vacate its decision and certify to the Rhode Island Supreme Court, pursuant to G.L. 1956 § 9-24-27 and Rule 72 of the Rhode Island Superior Court Rules of Civil Procedure, the question of the power of the Office of the Comptroller of the Currency under 12 U.S.C. § 1818(b)(1) to regulate allegedly unfair or deceptive advertising, promotional and marketing acts and practices by national banks. Defendants contend that this legal issue is dispositive of the question of whether they are exempt from the RIUTPA and, by extension, their motion to dismiss. After entertaining oral argument as to defendants' motion for reconsideration or certification and plaintiffs' objections thereto on June 21, 2001, this decision follows.
 Motion to Reconsider
The Rhode Island Rules of Civil Procedure, like the Federal Rules of Civil Procedure, generally do not recognize or provide for a motion for reconsideration. See generally, Hatfield v. Bd. of Cty. Comm'rs for Converse Cty., 52 F.3d 858 (10th Cir. 1995) (citations omitted). Our Supreme Court, in noting its governance by the "liberal rules" of civil procedure, has "look[ed] to substance not labels." Sarni v. Melocarro,113 R.I. 630, 636, 324 A.2d 648, 651-52 (1974). Consequently, "[a] motion can be construed as made under Rule 60(b) even if it is styled `Motion to Reconsider. . . .'" James Wm. Moore et al., Moore's Federal Practice 1997 Rules Pamphlet 60.2 [9] (1996). Rule 60(b) does not "constitute a vehicle for the motion judge to reconsider the previous judgments in light of later-discovered legal authority that could have and should have been presented to the court before the original judgment entered." Jackson v. Medical Coaches, 734 A.2d 502, 505 (R.I. 1999) (citations omitted). With respect to vacating final judgments, the mistakes encompassed by R.C.P. 60(b)(1) do not include judicial errors of law. See Jackson, 734 A.2d at 507. Rule 60(b)(1) is also "not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996). Thus, Rule 60(b) does not authorize "`a motion merely for reconsideration of a legal issue . . . where the motion is nothing more than a request that the [trial] court change its mind.'" Jackson, 734 A.2d at 508 n. 8 (citing United States v. Williams, 674 F.2d 310, 312-13 (4th Cir. 1982)).
In Jackson, our Supreme Court recognized that reconsideration of a previous legal error under Rule 60(b) is allowable "only [in] situations in which `the mistake was clear on the record, and involved a plain misconstruction of the statute on which the action was grounded.'" 734 A.2d at 507 (quoting Alvestad v. Monsanto Co., 671 F.2d 908, 912 (5th Cir 1982)). Rule 60(b), however, is applicable in situations involving relief from a final judgment, order or proceeding. Super. R. Civ. P. 60(b). The finality contemplated by the rule "envisions an order that definitely terminates the litigation and leaves nothing more for the court to decide." Murphy v. Bocchio, 114 R.I. 679, 683, 338 A.2d 519, 523 (1975).
The matter before this Court involves reconsideration of an interlocutory order: the denial of defendants' motion to dismiss.[6] It is well-settled that a trial justice "retains the inherent power to modify any interlocutory judgment or order prior to final judgment." Murphy, 114 R.I. at 682, 338 A.2d at 522; 11 Wright Miller, Federal Practice Procedure § 2852 at 233 (1998) ("[T]he power of a court to modify an interlocutory judgment or order at any time prior to final judgment . . . is not limited by the provisions of Rule 60(b)."). Interlocutory judgments or orders "are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." 11 Wright Miller, Federal Practice Procedure § 2852 at 233 n. 8 (1998) (quoting Advisory Committee Note to the 1948 amendment to Rule 60(b) of the Federal Rules of Civil Procedure).[7]
In support of its motion for reconsideration, Fleet contends that several events intervening since this Court's earlier decision on the defendants' motion to dismiss, warrant the Court's reconsideration of its decision with respect to plaintiff's RIUTPA claim. Specifically, Fleet enumerates the following:
 1. "The May 3, 2001 letter to this Court from the OCC's First Senior Deputy Comptroller and Chief Counsel supporting the instant motion for reconsideration or certification and expressing the OCC's view that it is empowered under 12 U.S.C. to enforce Section 5(a) of the Federal Trade Commission Act (15 U.S.C. § 45(a)) against national banks;
 [2.] The brief filed by the OCC on May 31, 2001 in the Supreme Court stating that it was `vitally interested in further review of [this Court's] decision' because it believed this Court's interpretation of 12 U.S.C. § 1818(b)(1) was erroneous and would `hinder the OCC's efforts to ensure that national banks treat all their customers fairly and responsibly in accordance with the standards of the FTC Act and sound banking practices.' (OCC Brief at p. 8); and
 [3] A new OCC Consent order wherein, pursuant to its authority under 12 U.S.C. § 1818(b), it has once again enforced Section 5(a) of the FTC Act and state consumer fraud laws against a national bank credit card issuer that allegedly engaged in false and deceptive acts and practices. In the Matter of Direct Merchants Credit Card Bank, N.A., Scottsdale Arizona, OCC No. 2001-24 (May 3, 2001) (Exhibit "E" to Fleet's Petition for Certiorari)." Fleet Reply Mem. at 3.
Fleet has not asked that this Court consider the OCC's letter to the Court dated June 20, 2001.
In this Court's view, none of these intervening events justifies the defendants' motion for reconsideration. First, the OCC's letters to this Court are procedurally improper attempts by a non-party to be heard by this Court regarding defendants' motion. Pursuant to the Superior Court Rules of Civil Procedure, the OCC, if it desired to be heard, could have filed a motion to intervene.[8] Instead, it attempts to present its opinions without appearing or formally stating such opinions in the proper form of a court pleading signed by counsel of record and filed, as required by Rule 11 of the Rhode Island Rules of Civil Procedure. While the OCC has filed a motion in the Supreme Court for leave to file a memorandum in support of defendants' petition for issuance of a writ of certiorari, the agency has not attempted to intervene in this Court with respect to the defendants' motion to dismiss or defendants' motion for reconsideration or certification. Additionally, the parties have not filed or submitted the OCC letters as an attachment to any pleading before the Court. Accordingly, it is inappropriate for this Court to consider the substance of the OCC letters.
Similarly, OCC's brief, filed in the Supreme Court, is not properly before this Court for its consideration of this matter. The OCC filed its memorandum in another forum subject to a determination by the Supreme Court (that has not yet been made) as to whether to grant it leave to file that brief.
Lastly, the Court views the May 3, 2001 Consent Order submitted by the defendants with the same analysis applied to Fleet's reliance on the Providian National Bank Consent Order. Decision (April 20, 2001) at 12. Specifically, it is outside the pleadings and cannot be considered in connection with defendants' motion to dismiss without legal explanation or justification of the source and intent of its provisions.
Even though the Court has the inherent power to review an interlocutory order and judicial economy may result therefrom, the legal authority submitted by Fleet in support of its motion for reconsideration, to the extent not provided previously, could have and should have been presented to this Court prior to its earlier decision on defendants' motion to dismiss. Fleet admitted as much, repeatedly, in the oral argument with respect to its request for reconsideration. In this Court's opinion, therefore, Fleet had its proverbial bite of the apple at this earlier stage of the proceedings.
Moreover, even if a qualitative examination is made of Fleet's legal arguments in support of reconsideration, it does not alter this Court's prior analysis or decision. Even assuming the OCC has authority to find deceptive practices unlawful pursuant to § 5 of the Federal Trade Commission Act ("FTCA"), codified at 15 U.S.C. § 45(a), the statute cannot be read to the exclusion of 15 U.S.C. § 57(a)(f), which requires specific regulations defining unfair and deceptive acts or practices with respect to banks. Similarly, regarding such acts or practices, the enforcement provision, 12 U.S.C. § 1818(b)(1), cannot be read to the exclusion of § 57a(f).
Section 5(a) of the FTCA, codified at 15 U.S.C. § 45(a)(1), declares that "unfair or deceptive acts or practices in commerce" are unlawful. Although the Federal Trade Commission is empowered to make regulations as to businesses or persons other than banks for the purpose of carrying out this provision, 15 U.S.C. § 57a(a)(1), Congress recognized the need for defining such acts or practices with specificity. See Katharine Gibbs School, Inc. v. Federal Trade Comm'n,612 F.2d 658, 662 (2d Cir. 1979) (quoting Conf. Rep. No. 93-1408, Joint Explanatory Statement of the Committee of Conference, reprinted in [1974] U.S. Code Cong. Ad. News, pp. 7702, 7755, 7763) ("Because the prohibitions of section 5 of the Act are quite broad, trade regulation rules are needed to define with specificity conduct that violates the statute and to establish requirements to prevent unlawful conduct."). In pertinent part, 15 U.S.C. § 57a(a)(1)(B) provides that the Commission may prescribe "rules which define with specificity acts or practices in or affecting commerce within the meaning of section 45(a)(1) of this title."[9] (emphasis added). Pursuant to the FTCA, a violation of any rule under § 57a(a)(1)(B) shall constitute an unfair or deceptive act or practice in violation of § 45(a)(1) of the FTCA.15 U.S.C. § 57a(d)(3).
Similarly, regarding banks, the FTCA provides that the Board of Governors of the Federal Reserve System ("Board") with respect to banks "shall prescribe regulations to carry out the purposes of this section, including regulations defining with specificity such unfair or deceptive acts or practices, and containing requirements prescribed for the purpose of preventing such acts or practices."[10] 15 U.S.C. § 57a(f)(1) (emphasis added). Compliance with such regulations, the Act states, "shall be enforced under section 8 of the Federal Deposit Insurance Act,12 U.S.C. § 1818, in the case of national banks . . . by the division of consumer affairs established by the OCC . . . ."15 U.S.C. § 57a(f)(2). Unlike § 57a(d)(3), however, the FTCA does not provide that a violation of any regulation prescribed by the Board pursuant to § 57a(f) is a violation of § 45(a)(1) of the FTCA. Instead, it expressly provides that "a violation of any regulation prescribed under this subsection shall be deemed to be a violation of the requirement imposed under that Act [12 U.S.C. § 1818 and respective banking agencies' statutes]." 15 U.S.C. § 57a(f)(5). Additionally, § 57a(f) provides that the OCC or the respective agency may exercise, for the purpose of enforcing compliance with any regulation prescribed under § 57a(f), any other authority conferred on it by law. 15 U.S.C. § 57a(f)(5).
Clearly, the OCC has been granted the power to regulate unfair or deceptive acts or practices as to national banks. See Vogt v. Seattle-First National Bank, 817 P.2d 1364 1372-3 (Wash. 1991) (en banc) (The OCC "has authority to resolve questions of unfair and deceptive practices by national banks. The Board of Governors of the Federal Reserve System is authorized to prescribe regulations to carry out this authority and to define unfair or deceptive acts or practices." The OCC "enforces compliance with these provisions under its general enforcement authority." (citing 15 U.S.C. § 57a (f)(1), 57a(f)(2)(A) and12 U.S.C. § 1818(B)(1))); Federal Trade Comm'n v. Winters National Bank Trust, 601 F.2d 395, 399 (6th Cir. 1979) ("[T]he power to investigate unfair or deceptive acts by banks lies with the [OCC] pursuant to 15 U.S.C. § 57a(f)(1) and (2)(A).") The OCC's authority to exercise control over banks, however, "must be subordinate to the law from which [it has] received [its] authority, and is subject to the limitations imposed by that law." First National Bank of Bellaire v. Comptroller of the Currency, 697 F.2d 674, 680 (5th Cir. 1983).
The defendants have not provided the Court with any legal authority to demonstrate that the OCC can enforce § 5(a) of the FTCA despite Congress' express mandate requiring the Board to promulgate specific regulations regarding unfair or deceptive acts or practices.15 U.S.C. § 57(a)(f). Even assuming that the OCC has some general power to regulate unfair or deceptive trade practices under § 5 of the FTC Act and, by extension, to enforce those provisions under12 U.S.C. § 1818, the defendants have not established that the OCC, absent compliance with the mandates of 15 U.S.C. § 57a(f)(1), has the power to regulate the alleged bait and switch conduct at issue in this case. The defendants have not established that the Board has adopted Federal Trade Commission regulations (e.g., 16 C.F.R. § 238.0), promulgated "substantially similar" regulations or otherwise complied to find "such acts or practices are not unfair or deceptive" or that implementation of similar regulations with respect to banks would "seriously conflict" with essential Board policies, and "publish any such finding, and the reasons therefor, in the Federal Register."15 U.S.C. § 57a(f)(1).
To interpret the OCC's purported power under § 5 in such a fashion would be tantamount to a determination that the OCC has the power to enforce the very bait and switch regulation adopted by the FTC under § 5 of the FTCA [codified at 15 U.S.C. § 57(a)(a)(1)], which Congress granted the Board of Governors the power to adopt under15 U.S.C. § 57(a)(f)(1) but which it has chosen not to adopt. Part of the purpose of Congress' requiring the Board to adopt those regulations under 15 U.S.C. § 57a(f)(1) that it wishes to enforce against banks is to define specifically the boundaries of federal regulatory power over banks so as to provide banks with notice of what specific areas are the subject of federal regulation.[11] See Katharine Gibbs School, Inc. v. Federal Trade Comm'n, 612 F.2d 658 (2d Cir. 1979). This Court is not persuaded, therefore, that it misconstrued the pertinent statutes.
In addition, Fleet also contends that the OCC can enforce state laws, including Rhode Island's Unfair and Deceptive Trade Practices Act, thereby precluding plaintiffs' RIUTPA claim. Even assuming the OCC can enforce state law under 12 U.S.C. § 1818, regardless of its power to enforce § 5 of the FTC Act and the absence of specific regulations under 15 U.S.C. § 57(a)(f)(1), the defendants have cited no authority to indicate that the OCC has the power to enforce the provisions of the RIUTPA against the defendants in this case. Indeed such an argument is inconsistent with the defendants' position that they are exempt from the RIUTPA because they are regulated under federal law. Mem. in Support of Defs.' Motion for Reconsideration at 6; Defs.' Reply Mem. at 12-13. Moreover, the defendants want this Court to accept the incongruous proposition that they are exempt from the RIUTPA under state law but nonetheless subject to the RIUTPA under federal law, in essence arguing that the Rhode Island courts cannot enforce Rhode Island law and that the OCC holds the exclusive power to enforce the RIUTPA by pouring its provisions into federal law.
Essentially, the defendants contend that federal law preempts state law — which is contrary to how states generally interpret their unfair and deceptive trade practices acts.[12] Yet to make this
preemption argument, they rely on federal enforcement of the very state law that they claim is preempted.
Even assuming the OCC could enforce the RIUTPA, under Rhode Island law, consideration should be given to the FTC Act and FTC regulations in interpreting the RIUTPA.[13] G.L. 1956 § 6-13.1-3. Under the FTC Act, certain bait and switch conduct is specifically proscribed. See 16 C.F.R. § 238.0.[14] For the defendants to argue that the OCC has the power to enforce the RIUTPA against them would be tantamount to their arguing that OCC has the power to enforce the very FTC regulation that the Board has elected not to adopt and make applicable to banks.
Accordingly, regardless of the boundaries of the OCC's power to enforce § 5 of the FTC Act or 12 U.S.C. § 1818, this Court is not persuaded that those powers extend to enforcing the provisions of federal law (or state law that makes reference to it) that could specifically regulate the conduct at issue in this case. There is no reason, therefore, for the exemption under the RIUTPA to be interpreted by this Court as depriving the Rhode Island courts of authority to enforce the RIUTPA. Based on the foregoing, the Court would decline defendants' request to reconsider its April 20, 2001 decision with respect to the plaintiffs' RIUTPA claim.
 Certification of Question to the Rhode Island Supreme Court
Pursuant to G.L. 1956 § 9-24-27 and Super. R. Civ. P. 72,[15] Fleet asks the Court in the alternative to vacate its earlier decision and to certify to the Rhode Island Supreme Court the following question of law: "Does the Comptroller of the Currency have the power under12 U.S.C. § 1818(b)(1) to regulate allegedly unfair or deceptive advertising, promotional and marketing acts and practices by national banks?" Mem. in Support of Defs.' Motion for Reconsideration at 6. Fleet contends that the issue is "exceptionally important" and an issue of first impression in the courts. Further, Fleet maintains that in this context of a putative nationwide class action, certification is appropriate to avoid substantial burdens and expenses on the parties as well as the courts. In its Reply Memorandum, Fleet asks the Court to vacate its April 20, 2001 Decision regarding the plaintiffs' Deceptive Trade Practices claim and to conclude, based on recent submissions by Fleet and the OCC, that it is unable to resolve the question of law satisfactorily. Defs.' Reply Mem. at 4.
With respect to certification, General Laws 1956 § 9-24-27
provides in pertinent part that:
 "Whenever in any proceedings . . . in the [S]uperior Court . . . any question of law shall arise . . . which, in the opinion of the court . . . is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the [S]upreme [C]ourt before further proceedings, the court in which the cause is pending shall certify the question or motion to the [S]upreme [C]ourt for that purpose and stay all further proceedings until the question is heard and determined."
Regarding what is required of a trial justice before he or she can certify a question of such doubt and importance, our Supreme Court has
 "`consistently and repeatedly mandated that a trial or hearing justice should not certify a question of law to [the Supreme] Court unless and until he or she first carefully considers the question or questions sought to be certified and then, after having had the benefit of counsels' research and informed arguments, believes that he or she is unable to resolve the questions satisfactorily.'" Pierce v. Pierce, 770 A.2d 867, 870 (R.I. 2001) (quoting Bayview Towing, Inc. v. Stevenson, 676 A.2d 325, 329 (R.I. 1996)); other citations omitted).
See also In re Christopher S., No. 2000-212-A (R.I., filed May 15, 2001); State v. Carcieri, 730 A.2d 11 (R.I. 1999); Inman v. Whitehouse, No. 2001-138, Slip Op. at 2. (R.I., entered May 24, 2001) (order) (trial justice was obliged in the first instance to attempt to address the issues raised by the certified questions so that the Supreme Court upon review would have a complete record, including the learned trial justice's decision on the issues). "By making a decision, after the benefit of counsels' research and arguments, and then certifying a question to the Supreme Court, the trial justice . . . creates a thorough record and provides the Supreme Court with the benefit of his or her reasoning and rationale." Pierce, 770 A.2d at 870. Although our Supreme Court may accept a certified question when there are "critical and substantial reasons" therefor, In re Christopher S., supra, Slip Op. at 3 (citing State v. Jenison, 122 R.I. 142, 146, 405 A.2d 3, 5 (1979)), the Court has consistently declined to "`encourage short-circuiting of proper trial procedure by entertaining improperly certified questions' in instances [in] which certification was `motivated primarily by the desire of the parties to reach promptly a final decision by [our Supreme] Court.'" Carcieri, 730 A.2d at 14 (quoting Richardson v. Bevilacqua,115 R.I. 49, 53, 340 A.2d 118, 120 (1975)). Moreover, certification is precluded once a trial justice considers and rules on a question of law in the context of a motion to dismiss. State v. Phillips, 430 A.2d 1061, 1062-63 (R.I. 1981).
Having afforded the parties ample opportunity to research and argue the issues, this Court has considered and decided the pertinent issues of law. Therefore, the defendants' request for certification, following this Court's decision on the merits of their motion, is untimely. Phillips, 438 A.2d at 1062-63. Moreover, while recognizing that this matter contains issues of some importance, and perhaps even issues of first impression, the Court, even if it were to reconsider its earlier decision, does not find these legal issues so doubtful as to render the Court unable to resolve them satisfactorily. Accordingly, the defendant's request that the Court vacate its earlier decision and certify the question of law to the Supreme Court is denied.
 Conclusion
For the reasons set forth in this decision, defendants' motion for reconsideration or certification is denied in its entirety. Counsel shall confer and submit to the Court forthwith for entry an agreed-upon form of order reflective of this decision.
[1] It does not appear that the OCC ever filed this letter in the Superior Court nor has the signatory of the letter entered an appearance in this Court.
[2] Apparently, the letter, although containing no certificate of service and not styled as a pleading, was intended by defendants as a pleading to supplement their memorandum in support of their motion.
[3] This letter similarly contained no certificate of service and was not styled as a pleading but also apparently was intended by plaintiffs as a pleading.
[4] Other tangential activities have occurred during the recent travel of this case. On May 3, 2001, Leonard Douglas, a non-party and apparent Fleet customer, who had read a media report regarding this matter, filed a letter with the Clerk of this Court. The plaintiffs filed a Motion for Class Certification on May 9, 2001 to which the defendants objected. That matter was assigned to the formal and special cause calendar. On May 25, 2001, the justice presiding over the business calendar assigned this case to that calendar.
[5] As with its May 3, 2001 letter to the Court, it does not appear that the OCC ever filed this letter in the Superior Court nor did its signatory ever enter an appearance in this Court.
[6] It is well-settled that the sole function of a motion to dismiss is to test the sufficiency of the complaint. Rhode Island Affiliate, American Civil Liberties Union, Inc. v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989). When ruling on a Rule 12(b)(6) motion, the trial justice, in applying the substantive law, "must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." Estate of Sherman v. Almeida, 747 A.2d 470, 473 (R.I. 2000) (quoting Rhode Island Affiliate, American Civil Liberties Union, Inc., 557 A.2d at 1232); see also Warren Education Association v. Lapan, 103 R.I. 163, 170, 235 A.2d 866, 870 (1967).
[7] While generally recognizing that interlocutory judgments and orders of the Superior Court may be modified at any time, Rhode Island law does not specifically define a motion for reconsideration as the appropriate procedural vehicle for obtaining such relief nor does it define with particularity the standards governing reconsideration or modification of interlocutory judgments or orders. A standard allowing modification or reconsideration "as justice requires" grants the court broad discretion to decide whether to entertain a request for reconsideration or modification. Presumably that discretion must be exercised in a manner that is mindful of the delicate balance between securing the "speedy and inexpensive determination of every action," see Murphy v. Bocchio, 114 R.I. at 685, 338 A.2d at 524, and the "incessant command of the court's conscience that justice be done," Bankers Mortgage Co. v. United States,423 F.2d 73, 77 (5th Cir. 1970).
[8] Super. R. Civ. P. 24 provides for (a) intervention as a matter of right and (b) for permissive intervention upon timely application by a proposed intervenor. The rule is silent regarding what constitutes a timely application. However, it is well-settled that timeliness of a motion to intervene is a matter committed to the sound discretion of the trial justice. Dare v. Gannon, 713 A.2d 218, 222 (R.I. 1998) (citing Marteg Corp. v. Zoning Board of Review of Warwick, 425 A.2d 1240, 1242 (R.I. 1981)). Timeliness of intervention is determined by two factors: "(1) the length of time during which the proposed intervenor has known about his or her interest in the suit without acting and (2) the harm or prejudice that results to the rights of other parties by delay." Marteg Corp., 425 A.2d at 1243. Of the two, "the latter is the more important consideration." Id.
 With respect to permissive intervention, Super. R. Civ P. 24(b) provides: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency, upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
Procedurally, a person desiring to intervene "shall serve a motion to intervene upon the parties as provided in Rule 5." Super. R. Civ. P. 24(c).
[9] The Federal Trade Commission specifically has prescribed certain bait and switch conduct. See 32 Fed. Reg. 217 (Nov. 8, 1967), codified at16 C.F.R. § 238.0, infra at 13, n. 14.
[10] Subsection f(1) of 15 U.S.C. § 57a continues:
 "Whenever the Commission prescribes a rule under subsection (a)(1)(B) of this section, then within 60 days after such rule takes effect such Board shall promulgate substantially similar regulations prohibiting acts or practices of banks . . . which are substantially similar to those prohibited by rules of the Commission and which impose substantially similar requirements, unless (A) any such Board finds that such acts or practices of banks . . . are not unfair or deceptive, or (B) the Board of Governors of the Federal Reserve system finds that implementation of similar regulations with respect to banks . . . would seriously conflict with essential monetary and payments systems policies of such Board, and publishes any such finding, and the reasons therefor, in the Federal Register." (emphasis added).
[11] It is curious in this case that the defendants, as regulated entities, seek to broaden the power of the OCC, as regulator. Were the OCC to seek to enforce § 5 of the FTC Act as defendants contend it could against these defendants in this very case, it seems that Fleet would want to argue that there is no specific prohibition of the alleged bait and switch conduct under federal law. Certainly no bank is on notice from the OCC's regulatory scheme that it would seek to regulate such conduct as an unfair or deceptive trade practice under § 5 absent appropriate regulation. These defendants must be confident that the OCC does not possess the power under federal law to regulate their alleged conduct under § 5 of the FTCA and to take enforcement action for any purported § 5 violation under 12 U.S.C. § 1818 (or that the OCC will not seek to exercise any such alleged power) such that defendants are free to argue that such power exists in an effort to invoke the exemption under the RIUTPA.
[12] Normand Josef Enterprises, Inc. v. Connecticut National Bank,646 A.2d 1289, 1306 (Conn. 1994) (citing see, e.g., Raymer v. Bay State National Bank, 384 Mass. 310, 424 N.E.2d 515 (1981); Heastie v. Community Bank of Greater Peoria, 727 F. Supp. 1133 (N.D.Ill. 1989) (applying Illinois consumer fraud statute); Perdue v. Crocker National Bank,38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503 (1985), appeal dismissed,475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986); Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 591 P.2d 51,153 Cal.Rptr. 28 (1979); First National Bank of Anthony v. Dunning,18 Kan. App. 2d 518, 855 P.2d 493 (1993); Raymer v. Bay State National Bank, 384 Mass. 310, 424 N.E.2d 515 (1981); Attorney General v. Michigan National Bank, 110 Mich. App. 106, 312 N.W.2d 405 (1981); rev'd in part,414 Mich. 948, 325 N.W.2d 777 (1982); Baird v. Norwest Bank, 255 Mont. 317,843 P.2d 327 (1992); Ashlock v. Sunwest Bank of Roswell, N.A.,107 N.M. 100, 753 P.2d 346 (1988); Pennsylvania Bankers Assn. v. Commonwealth, 58 Pa. Commw. 170, 427 A.2d 730 (1981); Vogt v. Seattle-First National Bank, 117 Wn.2d 541, 817 P.2d 1364 (1991).
[13] General Laws 1956 § 6-13.1-3 provides:
 "It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 of this chapter due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended."
[14] Under this FTC regulation,
 "[b]ait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised."
[15] Rule 72 of the Superior Court Rules of Civil Procedure, entitled Certification, provides:
 "(a) Upon Motion of a Party. Whenever a statute provides for certification of an action or any question arising therein by the Superior Court to the Supreme Court application for certification shall be made by motion served on every other party at least 10 days prior to the times fixed for hearing thereon. The motion shall specify the matter sought to be certified.
 (b) Upon the Court's Own Initiative. Whenever a statute provides for certification of an action or any question arising therein by the Superior Court to the Supreme Court on the initiative of the Superior Court, the court shall, prior to certification, afford the parties an opportunity to be heard on the issue of certification and on the form any certified question shall take, irrespective of whether the applicable statute directs the Superior Court to certify or vests the Superior Court discretion with respect to certification."