THE COOKE CONTRACTING COMPANY v DEPARTMENT OF
STATE HIGHWAYS

1. HIGHWAYS—CONTRACTS—CONSTRUCTION—PERMISSIBLE MATERIALS.

"Open-hearth slag" was not a permissible material under a
contract for the supplying of aggregate base for concrete for the
construction of a highway where the bid proposal used by the
Department of State Highways to solicit bids for construction of
the highway included two alternatives with respect to the
materials to be used, one calling for "aggregate base concrete"
and the other calling for "aggregate base concrete (OH slag)",
and where the contractor submitted its bid to construct the
highway with "aggregate base concrete", because "open-hearth
slag" is not a normally anticipated material in the construction
of aggregate base for concrete, and because the bid proposal
alternative "aggregate base concrete (OH slag)" would have no
significant purpose, in terms of evaluating bids, if "open-hearth
slag" was a permissible construction material under the former
alternative (Standard Specifications for Highway Construction
3.02.02, 8.02.04c).

2. HIGHWAYS—CONTRACTS—CONSTRUCTION—PRICE REDUCTION—DU-
RESS.

A unit price reduction requested by the Department of State
Highways on the price for "open-hearth slag" to be charged by
a contractor supplying aggregate base for concrete for construc-
tion of a highway for the department does not support a claim
on the part of the contractor that its offer to modify the
original contract price in accordance with the department's
demands was made under duress where "open-hearth slag" was
not a permissible construction material under the contracts
because the department could have either required the contrac-
tor to use the agreed-upon materials, or to use a substitute
material under specified conditions.

3. CONTRACTS—MODIFICATION—ACCEPTANCE OF OFFER—FINDINGS OF
FACT—APPEAL AND ERROR.

A finding of fact by a trial court that proposed changes in price

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 39 Am Jur 2d, Highways, Streets, and Bridges §§ 64 *et seq.,* 96,
98, 100–102.

terms of construction contracts were approved prior to the commencement of construction, although no written acceptance of an offer to modify the contracts was made, was not clearly erroneous; therefore, the finding is fatal to a contention that the offer of modification was never accepted and that no legally enforceable alteration of the agreed-upon price occurred.

4. HIGHWAYS—CONTRACTS—CONSTRUCTION—MODIFICATIONS—CONSIDERATION.

The relinquishment by the Department of State Highways of its right under a contract to insist that stone, gravel, or blast-furnace slag be used as the material furnished for the aggregate base for concrete for the construction of a highway was adequate consideration to support the contractor's promise to reduce the price per ton of an alternative "open-hearth slag", the material actually used in the construction of the highway.

5. HIGHWAYS—CONTRACTS—CONSTRUCTION—MODIFICATIONS—EVIDENCE.

A letter from a contractor to the Department of State Highways, which constituted a valid and legally enforceable modification of the unit price per ton to be charged by the contractor for material to be furnished as an aggregate base for concrete for the construction of a highway, which expressly referred to only one of two contracts between the parties was properly found to be intended by the parties to apply to both contracts where the testimony adduced at trial indicated that the parties treated both contracts as one for all purposes save the unit price.

Appeal from Court of Claims, William R. Peterson, J. Submitted Division 2 November 9, 1973, at Lansing. (Docket No. 16786.) Decided March 28 1974. Leave to appeal denied, 392 Mich —.

Complaint by the Cooke Contracting Company against the Department of State Highways for monies due under two highway construction contracts. Judgment for defendant. Plaintiff appeals. Affirmed.

*Doyle, Smith, Whitmer & Carruthers, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

Before: BASHARA, P. J., and BRONSON and MC-GREGOR, JJ.

McGREGOR, J. Plaintiff commenced this action in the Court of Claims for certain monies allegedly due it under two highway construction contracts with the state. From an adverse judgment on the merits in that court and a subsequent denial of its motion for rehearing or a new trial, plaintiff appeals.

Plaintiff entered into two contracts with the defendant highway department, both of which included an item calling for the construction of "aggregate base for concrete". The bid proposals for both contracts, solicited on a unit price basis, contained two alternative items with respect to the aggregate base and specified that the bidder was not to bid on the same item under both alternatives.

Alternate A included this item:
"Aggregate Base for
Concrete            [quantity] 28,675 tons"
The comparable provision of alternate B read:
"Aggregate Base for
Concrete (OH Slag)".      [quantity] 32,976 tons

Plaintiff was low bidder with respect to both contracts and agreed to construct the aggregate base under alternate A for $3.50 per ton on the first contract and $3.75 per ton on the second.

The disagreement giving rise to this lawsuit began at the preconstruction conference when William Donaldson, an engineer for plaintiff, men-

tioned his intention to use open-hearth slag (OH slag) in the construction of the aggregate basis. The highway department's representative at the meeting thereupon advised Mr. Donaldson that plaintiff would have to reduce the price per ton to reflect the greater density of OH slag. (Limestone, natural aggregate, and blast furnace slag are permissible construction materials under alternate A; OH Slag is 15% denser than natural aggregate; thus, it requires 15% more [by weight] OH slag to surface the same amount of roadbed. Therefore, without the per ton price adjustment requested by defendant, the cost of the OH slag base would be about 15% higher than a natural aggregate base.)

In response to defendant's price adjustment request, on May 13, 1971, plaintiff sent the following letter, which refers expressly only to the first contract and was allegedly written "under protest" to defendant:

"The Cooke Contracting Co. when bidding this project did bid the Item of Aggregate Base for Concrete 'Natural', Code Number 030256 at $3.50 per ton.

"The Cooke Contracting Co. now desires to change this material from 'Natural' to Aggregate Base for Concrete (O.H. Slag), Code Number 03264 and submit to you for your approval a new unit price of $3.04 per ton.

"This new unit price is a reduction of $0.46 cents per ton from the original bid which will allow us to place this material at no increase cost to the Department."

Construction was begun, using OH slag, some time in May or June of 1971. On June 18 of that year, plaintiff sent a letter to the defendant highway department requesting payment for the aggregate base at the original contract price. On July 15, 1971, the department reiterated its position that payment would have to be made in accord-

ance with the unit price adjustment evidenced by Cooke's letter of May 13.

After completion of the construction, plaintiff sought payment in the Court of Claims at the original contract price, and is now appealing from a denial of such relief.

The pivotal question to be decided is whether alternate A of the proposal for the two contracts permits the use of open-hearth slag.

Plaintiff argues that the proposal, by its terms and in accordance with the Highway Department's Standard Specifications, allows the use of different materials, including OH slag, under alternate A.

Defendant responds that the very use of two alternatives in the proposal, alternate B of which expressly requires the use of OH slag, indicates that OH slag is not a permissible material under alternate A.

Having considered the bid proposal and related standard specifications, we agree with the conclusion of the Court of Claims that OH slag is not a permissible material under alternate A.

With respect to the construction of aggregate base for concrete surface, specification 3.02.02 allows the use of aggregate 22A, 22B, and 24A. Specification 8.02.04c provides that:

"These aggregates, generally used for base and surface courses, shall consist of gravel, stone, or blast furnace slag, in combination with natural sand, stone sand, or slag sand, and shall conform to the grading and physical requirements specified herein.

"Open-hearth slag and basic oxygen slag, when specifically permitted, shall consist of clean, tough, durable pieces of slag of reasonably uniform density and quality. It shall contain no free (unhydrated) lime."

In accordance with paragraph two of the above

quoted specification, OH slag is a "specifically permitted" alternate material under specification 3.02.02, which provides:

"Open-hearth slag may be used as an *alternate* material for gravel, stone or blast-furnace slag." (Emphasis added.)

Two aspects of the present problem are apparent from the foregoing brief review of pertinent standard specifications. First, OH slag is *sui generis* and so dealt with in the specifications. Though we presume to be neither highway engineers nor materials experts, it would appear that this special treatment afforded the use of OH slag is founded upon considerations relating to the effect of its high relative density on construction costs. Secondly, OH slag "may be used as an alternate material" under specification 3.02.02. These two aspects of the case would certainly indicate that OH slag is not a normally anticipated material in the construction of aggregate base for concrete. The only effect of specification 3.02.02 is to allow the department to let bids wherein OH slag is a specified alternate material. That, in our view, was precisely the purpose of alternate B of the bid proposal presently under consideration. The Highway Department, by virtue of alternate A, was soliciting bids for approximately 28,675 tons of aggregate base constructed from gravel, stone, or blast furnace slag. Alternate B solicited bids pursuant to the specific permission granted by specification 3.02.02 for construction of 32,976 tons of aggregate base made from OH slag. (Note that 32,976 is almost exactly 15% greater than 28,675; precisely the percentage by which the density of OH slag exceeds that of natural aggregate.) Indeed, it is apparent that alternate B would have

no significant purpose, in terms of evaluating bids, if OH slag was a permissible construction material under alternate A.

For these reasons, we hold that OH slag was not a permissible material under the alternate A item relative to the construction of aggregate base.

The remainder of plaintiff's objections to the judgment and order of the lower court relate primarily to the legal effect of plaintiff's letter to the Highway Department, under date of May 13, 1971, in which the unit price adjustment was offered.

Plaintiff first contends that the offer of modification was made under duress and, hence, legally inoperative. We find it unnecessary to consider at length this argument. Suffice it to say that the offer was made after defendant's representatives indicated that plaintiff's proposed use of OH slag necessitated a price adjustment. Having already determined that OH slag was not a permissible construction material under the contracts, it becomes obvious that defendant could either require plaintiff to use the agreed-upon materials, *i.e.,* stone, gravel, or blast-furnace slag, or could allow plaintiff to use a substitute material under specified conditions. That the condition so imposed was a unit price reduction certainly fails to support any claim of duress.

Plaintiff also submits that defendant never accepted the offer of modification and hence no legally enforceable alteration of the agreed-upon price occurred. The trial court acknowledged that no written acceptance of the offer was made, but did find that the proposed changes were approved prior to the commencement of construction, in

telephone conversations between the parties. This finding of fact, not being clearly erroneous, is fatal to plaintiff's present contention.[1]

Next, plaintiff argues that the offer of modification, even if accepted, was never legally binding or enforceable because it was not supported by new consideration flowing from defendant. Many of the factors considered in dealing with the question of duress are relevant here. By virtue of the original contract, plaintiff was obligated to construct the aggregate base out of stone, gravel, or blast-furnace slag, and defendant was obligated to pay for such construction at the rate of $3.50 per ton ($3.75 per ton on the second contract). Plaintiff's intention to use OH slag was thus contrary to the terms of the contract and defendant would have been justified in requiring the use of stone, gravel, or blast-furnace slag. Thus, it can be seen that in exchange for plaintiff's promise to reduce the contract price by 46¢ per ton (49¢ on the second contract), defendant relinquished its legal right to insist that stone, gravel, or blast-furnace slag be used. This was adequate consideration to support plaintiff's promise to reduce the per-ton price.[2]

Finally, plaintiff alleges that even if the letter and its acceptance by defendant constitute a valid and legally enforceable modification, it nonetheless applied only to the first contract, to which it expressly referred. The testimony adduced at trial indicates that the parties treated both contracts as one for all purposes save the unit price. This course of conduct supports only one conclusion,

---

[1] GCR 1963, 517; *Curbelo v Macomb County Community College Trustees,* 38 Mich App 432; 196 NW2d 843 (1972).

[2] "The relinquishment or waiver of a legal or contract right or privilege is, as a general rule, sufficient consideration for a promise. There is sufficient consideration for a promise if the promisee forgoes some advantage or benefit, or parts with a right which he might otherwise assert." 17 Am Jur 2d, Contracts, § 109, pp 455–456.

namely, that the modification was intended by the parties to apply to both contracts.

Affirmed.

All concurred.