BURKHARDT v CITY NATIONAL BANK OF DETROIT

1. APPEAL AND ERROR—JUDGES—FINDINGS OF FACT.

The Court of Appeals will adopt as its own findings of fact by a trial court which are not shown to be clearly erroneous.

2. CONTRACTS—PERFORMANCE OF CONTRACTS—MANNER OF PERFORM-ANCE—DISCRETION—GOOD FAITH.

A party to a contract who makes the manner of its performance a matter of its own discretion must exercise that discretion honestly and in good faith.

3. BANKS AND BANKING—ESCROW LOANS—MORTGAGES—ACCOUNTING METHODS—DISCRETION—GOOD FAITH.

A bank exercised the discretion reposed in it by a mortgage agreement honestly and in good faith in the evaluation of the sum necessary to provide an adequate and available fund from which to pay taxes and insurance premiums where the accounting method it utilized did not oversecure it or guarantee a positive balance in the mortgagor's escrow account after the largest expense had been paid by the bank as mortgagee.

Appeal from Wayne, John H. Vander Wal, J. Submitted Division 1 June 12, 1974, at Detroit. (Docket No. 14699.) Decided January 27, 1975.

Complaint by James F. and Joanne I. Burkhardt, and Gerald J. and Karen L. Konieczny, on behalf of themselves and all others who have entered into conventional mortgage agreements with City National Bank of Detroit, against City National Bank of Detroit to enjoin defendant's use of a certain accounting method in handling escrow

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 900, 966.
[2] 17 Am Jur 2d, Contracts § 355 et seq.
[3] 10 Am Jur 2d, Banks §§ 196, 366.

accounts, and for damages resulting from excess payments wrongfully collected by defendant. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Lampert & Fried* (by *David M. Fried* and *Gary E. Levitt)*, for plaintiffs.

*Kemp, Klein & Endelman, P. C.* (by *Paul W. Cord* and *George J. Shears)*, for defendant.

Before: J. H. GILLIS, P. J., and ALLEN and EL-LIOTT,* JJ.

ELLIOTT, J. The plaintiffs are making monthly mortgage loan payments to the defendant bank. Included in the mortgage contract are paragraphs requiring monthly payments into an escrow account to enable the bank to pay, once a year when they become due, the city and county taxes and the insurance premiums. The proofs showed that the bank did not attempt to predict increases in those expenses. Instead, it utilized an accounting method treating the three expenses separately and requiring the mortgagor to pay into the account each month a sum equal to 1/12 the amount last paid for insurance plus 1/12 of the amount last paid for city taxes plus 1/12 the amount last paid for county taxes. The account balance would, consequently, equal 1/12 the amount last paid for each expense multiplied by the number of months that had elapsed since each expense was paid. The escrow account was in reality three separate accounts, one for each of the expenses. If a given expense remained the same from year to year, that portion of the entire account balance attributable to that particular expense would be exactly enough to pay the expense as it came due.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

For example, in the case of the Burkhardts, whose insurance and city taxes were due in July and whose county taxes were due in December, the formula used by defendants would require, as of December 31st, a balance equalling one half of the last payments for insurance and city taxes and 1/12 the amount paid for the county taxes.

Plaintiffs complain that this accounting procedure (in effect three separate escrow accounts) will result in a perpetual positive balance in the escrow account instead of a zero balance when the largest expense is paid (which in this case happens to be the county taxes). This method of accounting, claim plaintiffs, is not contemplated by the contract. An alternative accounting method would better effectuate the intent of the parties that the escrow account, at any point in time, contain the minimum possible amount necessary to secure defendant, they claim. Plaintiffs, in essence, argue that the three expenses cannot be considered separately and that they are entitled, as damages for this breach of contract, to interest on the excessive escrow account balance.

The defendant bank counters that the increases in these expenses from one year to the next cause the accounts to have very small or negative balances when the largest expense is paid; that its accounting method is preferable to guessing what the next year's taxes will be; that the procedure includes annual adjustments up or down; and that it is permitted by the language of the mortgage agreement.

Construing the agreement's language and ascertaining the intention of the parties (the foremost interpretive rule, *McIntosh v Groomes*, 227 Mich 215; 198 NW 954 [1924]; *Klever v Klever*, 333 Mich 179; 52 NW2d 653 [1952]), the trial court

found that defendant's utilization of its accounting method was not in breach of the contract. This finding of fact has not been shown to be clearly erroneous. We therefore adopt it as our own. GCR 1963, 517, *Cooke Contracting Co v Department of State Highways,* 52 Mich App 402; 217 NW2d 435 (1974).

The mortgage agreement reposes in defendant bank a considerable amount of discretion in the evaluation of the sum necessary to provide an adequate and available fund from which to pay taxes and insurance premiums. In the agreement, plaintiffs promised to pay "a sum *estimated by the mortgagee* to be sufficient to pay all general taxes * * * and a sum *estimated by the mortgagee* to be sufficient to pay premiums for * * * insurance". (Emphasis added.)

Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith. See 3A Corbin, Contracts, § 644, pp 78–84. Plaintiffs claim that the accounting method chosen by defendant oversecures the bank, guarantees a positive balance after the largest expense has been paid, and evidences bad faith. In theory, plaintiffs may be right; but, in fact, it did not work out that way.

Both the Burkhardts and the Koniecznys, who were business partners at the time, bought their homes in 1968 at which time they paid the first year's insurance premium directly. At the mortgage closing they each established an escrow account by paying in the amounts accrued by that time for each of the expenses to be paid by the bank when it was next due.

In the Burkhardts' case, the city tax due in 1968

was 123% of what it had been in 1967; in 1969 the total expenses paid by the bank were 120% of the total paid for taxes and insurance in 1968; in 1970 those expenses were 107% of the amount paid in 1969; and in 1971 the cost was 113% of what had been paid the previous year.

In 1968, 1969, 1970, and 1971 the bank paid out a total of $3,025.88 (and this does not include $119.00 paid in 1968 by the mortgagor for insurance) and during those years the Burkhardts paid into the escrow account $3,091.63. The difference is less than half of the insurance premium paid in 1971 ($170.00) due again in July.

The experience of the other plaintiffs was the same. They paid into the escrow account in those four years $2050.28 and the bank paid out $2023.91 not including anything for insurance in 1968, which by 1971 cost $146.00.

The case was tried in June of 1972, so the figures for that year were not available.

Plaintiff concedes that at the end of each year the accounts should have a balance equal to 1/12th of the estimated taxes and insurance that would be due in the following year because everything would have to be paid by or in December. The proofs showed that at the end of 1969 each account had a negative balance because the bank paid out more than had been received from plaintiffs for those purposes; in 1970 the balances on hand on the year end were a few dollars more than 1/12th of the total paid the following year; and, as of December 31, 1971 the slight balances were less than they should have been by any theory.

Affirmed. Costs to appellee.

All concurred.

## APPENDIX

*Account of Burkhardts:*

|  | 1968 | 1969 | 1970 | 1971 |  |
|---|---|---|---|---|---|
| Insurance | $119.00* | $119.00 | $133.00 | $170.00 |  |
| City Taxes | 122.72 | 132.37 | 143.32 | 150.98 |  |
| County Taxes | 397.98 | 512.62 | 541.75 | 602.14 |  |
| Total Expense | 639.70 | 763.99 | 818.07 | 923.12 |  |
| % of Prior Year |  | 120% | 107% | 113% |  |
| 1/12th of Total | 53.31 | 63.67 | 68.18 | 76.93 |  |
| Escrow | 379.80 | 12 × 50.63 | 2 × 50.63 | 3 × 83.63 |  |
|  | plus |  | 10 × 83.63 | 1 × 65.63 |  |
|  | 5 × 50.63 |  |  | 8 × 74.63 |  |
|  |  |  |  |  | Totals |
| Paid into Escrow | 632.95 | 607.56 | 937.56 | 913.56 | $3091.63 |
| Paid out by Bank | 520.70* | 763.99 | 818.07 | 923.12 | 3025.88 |
| Year end Balance | 112.25 | − 44.18 | 75.31 | 65.75 |  |

*Account of Koniecznys:*

|  | 1968 | 1969 | 1970 | 1971 |  |
|---|---|---|---|---|---|
| Paid into Escrow | $414.72 | $386.52 | $666.52 | $582.52 | $2050.28 |
| Paid out by Bank | 341.99* | 516.62 | 533.75 | 631.53 | 2023.89 |
| Year End Balance | 72.73 | − 57.39 | 75.38 | 26.37 |  |

* First insurance premium paid separately by mortgagors.