

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2005

# Cutrone v. DaimlerChrysler Mtr

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4259

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Cutrone v. DaimlerChrysler Mtr" (2005). *2005 Decisions.* Paper 71.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/71

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 04-4259

---

WILLIAM J. CUTRONE, owner;
CHRYSLER PLYMOUTH WEST, INC.
t/d/b/a Chrysler Jeep West,
Appellants

v.

DAIMLER-CHRYSLER MOTORS COMPANY, LLC,
a Limited Liability Corporation

---

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 03-cv-00861)
District Judge:  Honorable Gary L. Lancaster

---

Argued December 15, 2005

Before:  RENDELL, SMITH and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.

(Filed: December 21, 2005)

---

Michael J. Seymour     [ARGUED]
Albert G. Feczko, Jr.
Feczko & Seymour
310 Grant Street
520 Grant Building
Pittsburgh, PA  15219
    *Counsel for Appellants*

Christine L. Donohue

Klett, Rooney, Lieber & Schorling
One Oxford Centre
40th Floor
Pittsburgh, PA 15219

Robert D. Cultice      [ARGUED]
Wilmer Cutler Pickering Hale & Dorr
60 State Street
Boston, MA 02109
   *Counsel for Appellee*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

Chrysler Jeep West, a car dealership located in Coraopolis, Allegheny County, Pennsylvania, and its owner, William Cutrone (together, "Chrysler Jeep West"), appeal the District Court's order dismissing their claims against DaimlerChrysler Motors Co. ("DaimlerChrysler"). For the following reasons, we will affirm.

**I.**

Because we write only for the parties, we will state only the necessary facts. Chrysler Jeep West and DaimlerChrysler's predecessor corporation entered into a franchise agreement in 1990 that entitled Chrysler Jeep West to purchase and resell Chrysler and Plymouth vehicles. Sometime in the late 1990s, Chrysler Jeep West purchased a nearby Jeep franchise for approximately $2,000,000.[1] According to Chrysler

---

[1]Chrysler Jeep West's Second Amended Complaint does not specify when it purchased the Jeep franchise. In its First Amended Complaint, Chrysler Jeep West stated that it purchased the franchise in 1999. 1st Am. Compl. at ¶12.

2

Jeep West, DaimlerChrysler "pressured" it to purchase the franchise by announcing that the Plymouth line of vehicles would be discontinued at the end of the 2001 model year. DaimlerChrysler assured Chrysler Jeep West that purchasing the Jeep franchise would replace its Plymouth business and "eliminate competition" from its market area. *See* 2d Am. Compl. at ¶¶ 25-30, 54.

Throughout the 1990s, DaimlerChrysler maintained separate dealerships for its Dodge and Chrysler vehicles. Under this policy, only Chrysler dealers could sell Jeep vehicles, and no single dealer was permitted to sell Chrysler, Dodge and Jeep vehicles. Chrysler Jeep West relied on this policy in purchasing the Jeep franchise. Sometime in 1999, however, DaimlerChrysler changed its policy to favor "fewer but larger, more profitable dealerships." It created new "Alpha Dealerships" that sold Dodge, Chrysler and Jeep vehicles under the same roof. One such dealership, Mick's Dodge-Chrysler-Jeep, was located in Robinson Township, within ten miles of Chrysler Jeep West. *Id.* at ¶¶ 18-24.

Chrysler Jeep West complains that the creation of an Alpha Dealership within its market area was "unfair and inequitable." *Id.* at ¶ 24. It further contends that DaimlerChrysler acted in bad faith when it pressured Chrysler Jeep West into purchasing the Jeep franchise because it knew all along that it intended to establish a competing Alpha Dealership nearby. *See id.* at ¶¶ 29, 52-55. Based on these facts, Chrysler Jeep West advanced claims for relief under three separate legal theories, each expressed in a

3

separate count of its complaint: breach of contract, violation of the Automobile Dealer's Day in Court Act ("ADDCA"), 15 U.S.C. § 1221 *et seq.*, and fraud.  The District Court gave Chrysler Jeep West two opportunities to amend its complaint, but ultimately adopted the recommendation and report of a Magistrate Judge and granted DaimlerChrysler's motion to dismiss all three claims under Fed. R. Civ. P. 12(b)(6).

## II.

We have jurisdiction to review the District Court's final order of dismissal pursuant to 28 U.S.C. § 1291.  Our review of a dismissal under Federal Rule of Civil Procedure 12(b)(6) is plenary.  We accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of Chrysler Jeep West, the non-moving party.  "We may affirm a 12(b)(6) motion only if it is certain that no relief could be granted to the non-movant on any set of facts which could be proven."  *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001).

## III.

Chrysler Jeep West argues on appeal that the District Court dismissed each of its three claims improperly.  We have little difficulty affirming the dismissal of the second claim, under the ADDCA, and the third, for fraud.

In order to sustain a claim under the ADDCA, a plaintiff must allege and prove a breach of the manufacturer's duty to act in "good faith," 15 U.S.C. § 1222, which is defined in terms of "coercion, intimidation, or threats of coercion or intimidation."  15

4

U.S.C. § 1221(e).  The statute explicitly provides that "recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith."  *Id.*  We have explained that "[t]he type of coercion or intimidation rendered actionable under the ADDCA occurs only when the automobile manufacturer makes a 'wrongful demand which will result in sanctions if not complied with.'"  *New A.C. Chevrolet*, 263 F.3d at 326 (quoting *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 724 (3d Cir. 1971)).  Chrysler Jeep West complains of DaimlerChrysler's lack of "good faith" and "pressure," but fails to aver any coercion or intimidation or any activity on the part of DaimlerChrysler that could rise to the level of such coercion or intimidation under the statute and the relevant case law.  Rather, the essence of Chrysler Jeep West's claim is unfairness, a far cry from the basis for a claim under the ADDCA. Accordingly, we will not disturb the District Court's dismissal of the second count.

Chrysler Jeep West's fraud claim is similarly doomed, as the integration clause in the parties' 2000 franchise agreement prevents its assertion.  The Magistrate Judge found that the representations that form the basis for the fraud claim occurred sometime before the parties entered into a new franchise agreement in 2000.  *Magistrate Judge's Report and Recommendation* at 18 n.10.  That agreement contains an integration clause that specifically provides that the agreement and related documents "constitute the entire agreement between the parties" and that "[n]o representations or statements, other than those expressly set forth herein . . . are made or relied upon by any party hereto in

5

entering into this Agreement."  2000 Franchise Agreement ¶ 6.  Thus, as Chrysler Jeep West acknowledged in its briefs and at oral argument, the only way that it could state a claim for fraud would be to allege that the 2000 agreement or the integration clause therein was procured through fraud.  *See HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1279 (Pa. 1995)*; see also UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 419 (Mich. Ct. App. 1998).[2]  Because we conclude that none of the allegations in Chrysler Jeep West's Second Amended Complaint could plausibly be construed to allege fraud relating to the integration clause or the 2000 franchise agreement, we will affirm the District Court's dismissal of Chrysler Jeep West's fraud claim.

The breach of contract claim presents a somewhat closer question, made more difficult by Chrysler Jeep West's pleading and the relevant case law.

Chrysler Jeep West listed six ways in which DaimlerChrysler breached the franchise agreement in its complaint.[3]  However, none is tied to a specific right under the

---

[2]The Magistrate Judge cited cases from both Michigan and Pennsylvania law in discussing Chrysler Jeep West's fraud claim.  Because there does not appear to be any conflict between the states' laws on this issue, and because the parties have not contested the Magistrate Judge's application of cases from both states, we need not decide which state's law applies and adopt the Magistrate Judge's practice of citing both here.

[3]Those six ways are: (1) establishing an Alpha Dealership to compete with Chrysler Jeep West in its relevant market area and designated sales locality; (2) "circumventing" the approval process for "new" competing dealers required under Pennsylvania law; (3) increasing incentive allowances for vehicles sold by Chrysler Jeep West; (4) mailing advertisements for Mick's Dodge-Chrysler-Jeep to existing Chrysler Jeep West customers; (5) unilaterally changing the "operating rules, policies, course of dealing and

6

agreement. The essence of Chrysler Jeep West's argument is lack of good faith, but a duty of good faith arises only in connection with specific contractual obligations. *See Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1992). Chrysler Jeep West's briefing and oral argument focused on the "Sales Locality" section of the franchise agreement, in which Chrysler Jeep West is afforded a "non-exclusive right" to sell Chrysler products in its designated area, called its "Sales Locality." The definition of "Sales Locality" explicitly provides that the area "may be shared with other . . . dealers . . . as [DaimlerChrysler] determines to be appropriate." 2000 Franchise Agreement ¶ 4. Although it never referred to this language or provision in its complaint, Chrysler Jeep West now asserts that the "Sales Locality" provision implicates the duty of good faith that forms the basis for its breach of contract claim.

Unfortunately, Michigan law, which clearly governs,[4] is not a model of clarity. And while we have had occasion to construe Michigan's law of the implied duty of good faith, *see New A.C. Chevrolet*, 263 F.3d at 333-36, we have done so in a very different

trade usages" on which the franchise agreements were based; and (6) pressuring Chrysler Jeep West to purchase a Jeep franchise when it knew that a competing dealership was likely to be established nearby. 2d Am. Compl. at ¶ 36.

[4]The 2000 franchise agreement contains a choice of law provision that states that the agreement "shall be construed in accordance with the laws of the State of Michigan." 2000 Franchise Agreement at ¶ 42. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that federal courts sitting in diversity should apply the conflict of law rules of the forum state); *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 537 (Pa. Super. Ct. 1990) ("Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum.").

7

context.

In *Burkhardt v. City National Bank of Detroit*, 226 N.W.2d 678 (Mich. Ct. App. 1975), the plaintiffs complained that the accounting method that a mortgage company was using to calculate the amounts that they were required to pay into escrow for insurance and taxes on their property was not contemplated by the parties' agreement. *Id.* at 679. The Michigan Court of Appeals noted that "[t]he mortgage agreement reposes in defendant bank a considerable amount of discretion" in calculating the escrow amounts, and held that the bank was required to exercise such discretion in good faith. The court there stated that "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Id.* at 680. And in *General Motors Corp. v. New A.C. Chevrolet*, we held that a car manufacturer was required to exercise good faith in establishing additional dealers within a dealer's "Area of Primary Responsibility" based on a provision of the dealer agreement that spelled out the manufacturer's obligations in that regard.[5] 263 F.3d at 334-36.

---

[5]This provision, which was captioned "Establishment of Additional Dealers," read as follows:

> [GM] reserves the right to appoint additional dealers but [GM] will not exercise this right without first analyzing dealer network planning considerations.
> Prior to establishing an additional dealer within Dealer's Area of Primary Responsibility, [GM] will advise Dealer in writing and give Dealer thirty days to present relevant information before [GM] makes a final decision. [GM] will advise dealer of the final decision, *which will be made solely by* [GM]

In each such situation, the clauses relied upon pertained to the performance of a contract obligation. Here, by contrast, we have a straightforward understanding that Chrysler Jeep West's right vis a vis the "Sales Locality" is "non-exclusive" and that sharing would potentially occur. We do not read the inclusion of the concept that DaimlerChrysler would allow sharing as "appropriate" to introduce a duty of good faith, for "'Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights.'" *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989), *quoted in New A.C. Chevrolet*, 263 F.3d at 333-34. To impose a duty of good faith on DaimlerChrysler in this case would be to contradict the non-exclusive character of the right afforded Chrysler Jeep West in the agreement.

Although we acknowledge that the franchise agreement does not detail many rights available or reserved to Chrysler Jeep West, we will not rewrite it or interpret it in a way that is contrary to the bargain struck by the parties. We therefore agree with the District Court that Chrysler Jeep West has failed to state a breach of contract claim upon which relief can be granted.

---

*pursuant to its business judgment . . . .*
Neither the appointment of a dealer at or within three miles of a former dealership location as a replacement for the former dealer nor the relocation of an existing dealer will be considered the establishment of an additional Dealer for purposes of this [section]. Such events are *within the sole discretion of* [GM], *pursuant to its business judgment.*

*New. A.C. Chevrolet*, 263 F.3d at 334.

9

## IV.

We will affirm the order of the District Court.