NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0554n.06

Case No. 21-1126

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JENNIFER B. MILLER, fka Jennifer B. Fosgitt, | ) | **FILED** |
|  | ) | Dec 01, 2021 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| BANK OF NEW YORK MELLON, Successor | ) | UNITED STATES DISTRICT |
| Trustee to JPMorgan Chase Bank, National | ) | COURT FOR THE EASTERN |
| Association, as Trustee F/B/O Holders of | ) | DISTRICT OF MICHIGAN |
| Structured Asset Mortgage Investments II Inc., | ) |  |
| Bear Stearns Alt-A Trust 2005-10, Mortgage Pass- | ) |  |
| Through Certificates; SELECT PORTFOLIO | ) | OPINION |
| SERVICING, INC., | ) |  |
|  | ) |  |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Jennifer Miller bought a house in Midland, Michigan, in 2005 and took out a mortgage. After a decade, she ran into trouble making her payments. She unsuccessfully sought a loan modification from defendants, the successors in interest to her mortgage. In 2018, defendants initiated foreclosure proceedings against Miller, and after nearly a year of forbearance, the property was sold at a sheriff's auction in March 2019. Miller then brought this suit, alleging that the foreclosure was a breach of contract as well as violative of state and

federal law. The district court dismissed a portion of her claims and granted summary judgment on the remainder. For the reasons set forth below, we AFFIRM.

I.

Plaintiff-Appellant Jennifer B. Miller (then Fosgitt) and her then-husband Richard Fosgitt II purchased 5004 Bristlecone Drive, Midland, Michigan, from Strata Homes LLC on October 17, 2005. She obtained a $423,600 loan from CMX Mortgage Company LLC and she and Fosgitt granted Mortgage Electronic Registration Systems, Inc. (MERS) a mortgage encumbering the property. Miller lived in the house from 2005 until 2011 and returned in 2017. As of August 2020, Miller lived at the property.

Miller's loan changed hands during this period. When payments began in December 2005, the loan was transferred from CMX Mortgage Company to Bear Steans ALT-A Trust 2005-10, Mortgage Pass-Through Certificates, Series 2005-10. In March 2016, Miller was told that her loan servicer changed from JP Morgan Chase Bank N.A. to Defendant-Appellee Select Portfolio Servicing, Inc. (SPS). In November 2016, the mortgage was assigned to Defendant-Appellee The Bank of New York Mellon, Successor Trustee to JPMorgan Chase Bank, National Association, as Trustee F/B/O Holders of Structured Asset Mortgage Investments II Inc., Bear Stearns Alt-A Trust 2005-10, Mortgage Pass-Through Certificates, Series 2005-10 ("the Trust.")

Miller fell behind on her payments. Her last payment appears to have been made in 2017. By January 2019, SPS understood her to be 29 payments past due.

Beginning in December 2015, Miller began contacting her servicer regarding a loan modification. The record reflects many emails, letters and phone calls between Miller and her servicer, with her servicer typically responding that she needed to provide more documentation for her application to be complete. SPS first mailed Miller a notice of default on May 10, 2017. The

notice of default provided 30 days to cure. Absent a cure payment, SPS was allowed to initiate foreclosure and require payment of the full unpaid amount.

On February 22, 2018, SPS mailed notice to the property that a foreclosure sale was scheduled for March 27, 2018. (Miller testified that she believed that she was residing at the property at the time.) Notice was also posted to Miller's door and published in the local newspaper. The sale was adjourned every week until March 19, 2019.

On May 16, 2018, SPS mailed Miller a letter denying her application for a loan modification on the basis that she had not supplied the documents requested by SPS in a March 6, 2018 mailing. She appealed this decision with SPS and was again denied.

The sheriff's sale finally took place on March 19, 2019. The Trust purchased the home for $413,650.00. The Trust agreed to extend the statutory six-month redemption period until October 19, 2019, but Miller did not redeem the property.

In August 2019, Miller filed this lawsuit in state court. Defendants removed the case and filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. In January 2020, the district court dismissed all but three claims. After discovery, the defendants filed a motion for summary judgment. Miller did not respond to this motion. In January 2021, the district court granted summary judgment, dismissing the remainder of Miller's claims with prejudice. Miller then brought this appeal.

## II.

The District Court dismissed seven of ten counts of Miller's complaint, and then granted summary judgment on the remainder. Miller appeals the dismissal and grant of summary judgment as to nine counts of her claim.[1]

---

[1] Miller did not appeal the district court's denial of injunctive relief which was styled as a count of her complaint.

We review a ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss de novo. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). The complaint is viewed in the light most favorable to the plaintiffs, the complaints' allegations are accepted as true, and reasonable inferences are drawn in favor of the plaintiffs. A "legal conclusion couched as a factual allegation" need not be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must state a claim that is "'plausible on its face'" such that a court can make a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

We review a grant of summary judgment de novo. *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020). A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

**A. Illegal Foreclosure.**

Miller made two claims that defendants' foreclosure was illegal. First, she alleged that defendants failed to follow Michigan's requirements for foreclosure by advertisement, Mich. Comp. Laws § 600.3204. Second, she alleged that defendants' foreclosure was illegal for a variety of reasons stemming from their alleged failure to provide a notice of default as required by the mortgage. The district court dismissed the first and granted summary judgment on the second, and we affirm both.

First, we address the foreclosure-by-advertisement requirements. Michigan law controls the steps a mortgagee must take in order to properly foreclose, as well as "the rights of both the mortgagee and mortgagor once the sale is completed." *Conlin v. Mortg. Elec. Registration Sys,, Inc.*, 714 F.3d 355, 359 (6th Cir. 2013). The statute provides certain mortgagors with six months following the sale to redeem the property. Mich. Comp. Laws § 600.3240(8). The filing of a lawsuit cannot toll the redemption period. *Conlin*, 714 F.3d at 360. Once the redemption period expires, the sheriff's deed vests in the grantee and the "mortgagor's 'right, title and interest in and to the property' are extinguished." *Id.* at 359 (quoting *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942)). Courts can only consider setting aside a foreclosure sale if there is a "'clear showing of fraud, or irregularity'" in the foreclosure process itself. *Id.* at 359–60 (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). To prove a foreclosure defect claim, plaintiffs must show that they were prejudiced by a defendant's defect such that "they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 361 (quoting *Kim v. JPMorgan Chase Bank, N.A.,* 825 N.W.2d 329, 337 (Mich. 2012)).

In her complaint, Miller alleged that the Trust[2] did not own the Note. Therefore, she argued, the foreclosure by the Trust did not meet the requirements of Mich. Comp. Laws § 600.3204(1)(d). But the district court properly concluded that this was contradicted by the corporate assignment of the mortgage and the sheriff's deed, both included with the complaint.

Miller also argues that defendants' alleged violations of the federal regulations on so-called dual-tracking justifies setting aside the foreclosure as an illegal foreclosure-by-advertisement.

---

[2] Miller used the acronym "BONYTC," which the district court construed as Bank of New York Mellon. We will similarly construe the term to refer to Bank of New York Mellon as trustee, or the Trust.

Dual-tracking refers to the practice of reviewing an application for loan modification simultaneously with foreclosure proceedings. 12 C.F.R. § 1024.41(f) prohibits mortgagees from beginning foreclosure proceedings once a mortgagor has requested a loan modification. Defendants do not deny Miller's allegations that they initiated foreclosure proceedings before resolving Miller's outstanding application for a loan modification. But the regulations do not require a mortgagee to grant loan modification; they only require a mortgagee to consider a loan modification. 12 C.F.R. § 1024.41(a). And 12 C.F.R. § 1024.41(i) merely requires that the mortgagee considers one application for loan modification, not duplicative requests. The record shows that defendants sent notice denying Miller's loan modification application from March 2018 and provided her an opportunity to appeal.

This leaves the question of whether defendants' alleged violation of 12 C.F.R. § 1024.41(f) was an irregularity that prejudiced Miller from being in a better position to preserve her interest in the property absent the violation. Even if the regulatory violation is sufficient to constitute fraud or irregularity, Michigan law requires a further showing of prejudice to set aside a mortgage after the redemption window has closed. *See Conlin*, 714 F. 3d at 361 (citing *Kim*, 825 N.W.2d at 337). But Miller offers no evidence in pleading beyond the asserted regulatory violation to support a showing of prejudice. Particularly because defendants went on to consider her modification request and then continued to delay the foreclosure sale for nearly another year after, Miller is unable to establish a claim. The district court properly dismissed Miller's claim that the foreclosure should be set aside as a result of defendants' defects in the foreclosure process.

Miller also challenges the foreclosure sale as improper by the terms of her mortgage because she alleged that she never received a notice of default. The district court granted summary judgment because the record established that there was no genuine issue of material fact as to

whether Miller was provided with the notice of default. The record demonstrates that Miller was mailed a copy of the notice of default on May 10, 2017. Nothing in the record substantiates the allegations made in the complaint that Miller did not receive the notice of default. Summary judgment was appropriate.

### B. Damages for RESPA Violations.

Miller brought claims alleging violations of the Real Estate Settlement Practices Act (RESPA) and its associated regulations. She claims that defendants failed to adequately respond to her qualified written requests as required by 12 U.S.C. § 2605(e). She also claims that defendants violated the prohibition on dual tracking by pursuing a foreclosure while simultaneously reviewing Miller's loan modification.

The district court dismissed all claims for lack of standing, determining that Miller had failed to plead sufficient damages to constitute an injury-in-fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Miller alleged in two counts that the defendants failed to respond adequately to her qualified written requests in violation of 12 U.S.C. § 2605(e). Specifically, "[d]efendants did not provide all of the information sought in the letters," and that she "was inconvenienced and incurred expenses in seeking the information that [d]efendants refused to provide." R. 1-2, P. 29. For that violation, Miller requested:

> actual damages, including, but not limited to (1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience to the extent it resulted in actual pecuniary loss, (3) late fees and (4) denial of credit

> or denial of access to full amount of credit line, additional [statutory] damages in the amount of $2,000.00, plus attorney's fees, the costs of this lawsuit, and litigation expenses.[3]

R. 1-2, P 29.

12 U.S.C. § 2605(e) does not require a servicer to respond in full to a borrower's request. It requires a lender to provide "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2)(C)(i). So merely not providing some of the information Miller sought cannot be enough to seek damages. And Miller does not deny that SPS replied to her qualified written requests. We have held that the bar for adequately pleading RESPA violations dealing with qualified written requests is low. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720–21 (6th Cir. 2013) (plaintiff stated a claim for damages when, due to deficient response, bank misapplied payments); *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 422–25 (6th Cir. 2013) (plaintiffs stated a claim where the defendant missed the statutory deadline for a response and plaintiff sought "damages in an amount not yet ascertained"). But here, Miller has not pleaded a clear violation of the statute—SPS did not violate a statutory deadline or any procedural requirements, but provided information responsive to only some of her requests as allowed by statute. She also has not provided any theory for how the alleged violations caused her asserted actual damages. She does not put forward anything resembling a misapplied payment or other error that SPS failed to correct in its responses. Without more, she has not adequately plead a concrete injury-in-fact to survive dismissal.

---

[3] The district court asserted incorrectly that this request for specific damages originated in Miller's response to defendants' motion to dismiss and determined that it could not properly consider them on defendants' Rule 12(b)(6) motion. Because these damages were, in fact, included within her complaint, we consider them here.

As to Miller's claim for statutory damages, 12 U.S.C. 2605(f) allows for $2,000 in damages, in addition to fees and costs, only in a "case of a pattern or practice" of violation. Miller pleaded only the conclusion that there was a pattern or practice of violation without factual support for that conclusion. Given that her complaint fails to establish that there was a violation of 12 U.S.C. § 2605(e)(2)(C)(i), she is unable to establish a claim for statutory damages either. Taken together, she is unable to plausibly state a claim for relief for violations of 12 U.S.C. § 2605(e).

Miller claimed damages in another count for defendants' alleged violations of the dual-tracking prohibition in 12 C.F.R. 1024.41. For those, she requested only that the court "award Plaintiff actual damages, additional damages of $2000, attorney's fees, costs and litigation expenses." R. 1-2. P. 32. Miller asserts no evidence of what harm she suffered as a result of the dual-tracking violations. She pleads only a regulatory violation and a prayer for relief. Such an allegation of a "bare procedural violation, divorced from any concrete harm" is insufficient to establish standing. *Spokeo, Inc.*, 578 U.S. at 341. As to her request for statutory damages for dual-tracking, she merely asserts that there was a pattern or practice without any other pleading to support the claim. Taken together, she has failed to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

## C. Action to Quiet Title.

Miller sought to quiet title, arguing that the defendants' interest in the property was invalid. As already discussed, the Trust validly took title upon the expiration of the redemption period. Nothing about the foreclosure process requires setting the sheriff's deed aside. The district court properly dismissed this claim.

**D. Conversion to Judicial Foreclosure.**

Miller argues that the district court improperly dismissed her claim for conversion to judicial foreclosure. The district court determined that there was no such cause of action. Miller states that the district court was mistaken but offers only a description of the judicial foreclosure process in lieu of argument.

Under a Michigan statute that was repealed before Miller defaulted, a borrower could obtain conversion of foreclosure by advertisement to a judicial foreclosure if the lender failed to properly engage in a loan modification process. *See* Mich. Comp. Laws § 600.3205a(5); *Estate of Doreen Bessette v. Wilmington Trust N.A.*, 2016 WL 6947480 at *3, n.2 (E.D. Mich. Nov. 28, 2016). That remedy is not available under current law and was not available at the time of the foreclosure on Miller's home. *See id.*; Mich. Comp. Laws § 600.3101.

**E. Breach of Contract.**

Miller also made a claim for breach of contract. She alleged that "Defendants failed to provide Plaintiff the notices required by the Mortgage prior to foreclosing, constituting a breach of contract," and that defendants breached the implied covenant of good faith and fair dealing by "b. Dual tracking Plaintiff; c. Disingenuously negotiating loss mitigation assistance with Plaintiff; [and] d. Misleading Plaintiff about approval and extension of loss mitigation assistance as an alternative to foreclosure." R. 1-2, P. 30.

First, on the notice issue, the district court properly determined that defendants met their contractual obligations. As discussed above, Miller is unable to establish a genuine issue of fact as to whether she received the notice of default. She does not offer evidence that any other notice was insufficient or was not given beyond her own testimony that she does not remember seeing notice of the sheriff's sale posted on her door on February 28, 2019. Indeed, the years of

correspondence between Miller and her servicer, including the yearlong delay of the sheriff's sale, undermine the notion that notice was insufficient.

Next, summary judgment was also appropriate as to the good faith and fair dealing claims. Michigan law recognizes a claim for breach of contract where a defendant has failed to meet the standards of good faith and fair dealing where "one party 'makes the manner of its performance a matter of its own discretion.'" *Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 331 (6th Cir. 2017) (quoting *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. 1975)). As defendants note, the mortgage specifically states that forbearance or loan modification is not required by the mortgage, nor does it waive or preclude the exercise of their rights.

To be sure, the record does not suggest that SPS's loan modification scheme was a picnic. The record is replete with emails and communications from Miller that make clear that she spent well over a year stuck in bureaucratic purgatory—unable to get a representative on the phone and unable to get SPS to decide that her application complete. But throughout 2018 and 2019, her servicer evaluated her application for modification, delayed her sale weekly for a year, and responded to her requests. Miller is unable to identify any terms of the contract where defendants' discretionary performance breached the duty of good faith and fair dealing. *See id.* Thus, the district court properly found no genuine issue of material fact as to whether defendants breached their implied covenant.

### F. Declaratory Judgment.

Finally, Miller sought a declaratory judgment. The district court granted summary judgment. A declaratory judgment is not an independent cause of action. *See Davis v. United States,* 499 F.3d 590, 594 (6th Cir. 2007). Because Miller's other claims have all been dismissed, a declaratory judgment is not available to her.

III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.